(December 19, 1914.)

## STATE, Respondent, v. JOHN BOGRIS, Appellant.

### [144 Pac. 789.]

LARCENY OF CHECKS FROM PAYEE—EVIDENCE—ADMISSIBILITY OF TO
PROVE HANDWRITING—INSTRUCTIONS—BURDEN OF PROOF IN DEFENSE
OF ALIBI—CONSIDERATION OF NECESSITY FOR INTERPRETER IN PRES-
ENCE OF JURY—IMPEACHMENT OF DEFENDANT'S TESTIMONY—POSSES-
SION OF RECENTLY STOLEN PROPERTY.

1. Upon a prosecution for larceny of a check for a certain amount
of money, no proof of actual value is required, according to the
provisions of sec. 7053, Rev. Codes, as the law presumes that the
face value of the check is the actual value.

2. In a prosecution for the larceny of certain checks it is not
incumbent upon the state, for the purpose of establishing the value
of the checks stolen, to offer proof of their due execution by the
payer, or to prove the fact that they were never endorsed by the
payee.

3. *Held,* that Exhibits "A" and "B," consisting of checks charged
to have been stolen by the defendant in this case, and to have been
endorsed by him with the name of the payee, were admitted in evi-
dence in the first instance, not for the purpose of comparison of
handwriting, but for the purpose of establishing the crime committed.

4. The question, whether or not a witness requires an interpreter,
is a question for the court, and where counsel for defendant neglects
to request the court to pass upon this question without the presence
of the jury, he cannot afterward assign as error the action of the
court in not excusing the jury while this matter was being considered.

5. The state cannot be deprived of the right to cross-examine a
witness by the mere statement that such witness does not speak the
English language; and, if it is afterward established that such wit-
ness speaks and understands the English language, he is estopped
from taking any advantage of his conduct in asserting his inability
to speak and understand said language.

6. Where the court instructs the jury to the effect that if any
witness wilfully testified falsely as to any material fact, the jury
were at liberty to disregard the entire testimony of such witness, ex-
cept in case his testimony should be corroborated by other and re-
liable witnesses, the testimony of defendant having been impeached
by the prosecution, but it appearing, so far as the record shows, that

such instruction applied generally to all of the witnesses testifying in the case, the giving of such instruction was not error.

7. The following instruction, "Where the state proved such a case as would sustain a verdict of guilty, and the defendant then offers evidence, the burden of proof is on said defendant to make out his defense, and when the proof is all introduced then the primary question is, in the light of all the evidence, is the defendant guilty beyond a reasonable doubt," is not prejudicial to the defendant, by merely making it incumbent upon him to offer sufficient proof to raise a reasonable doubt in the minds of the jury as to his guilt.

8. If the defendant relies upon an *alibi* for the defense the burden of establishing such *alibi* is upon him. (*State v. Webb*, 6 Ida. 428, 55 Pac. 892, cited and approved.)

9. In giving the following instruction, the trial court did not trespass upon the right of the jury to pass upon all questions of fact, in accordance with the provisions of subd. 6, sec. 7855, Rev. Codes:

"You are further instructed that if you believe from the evidence beyond a reasonable doubt that the property described in the information was stolen and that the defendant was found in the possession of the property after it was stolen, then such possession is, in law, a strong, incriminating circumstance, tending to show the guilt of the defendant unless the evidence and the facts and circumstances thereunder show that he may have come honestly in possession of the same.

"In this connection I further instruct you that if you find from the evidence beyond a reasonable doubt that the property described in the information was found in the possession of the defendant, then in determining whether or not the defendant is guilty you should take into consideration all of the circumstances attending such possession."

10. The possession of recently stolen property is a circumstance from which, when unexplained, the guilt of the accused may be inferred. (*State v. Sanford*, 8 Ida. 187, 67 Pac. 492, cited and approved.)

11. *Held*, that no error was committed by the trial court in the giving of instructions in this case or refusal to give certain instructions offered by the defendant.

APPEAL from the District Court of the First Judicial District for the County of Shoshone. Hon. W. W. Woods, Judge.

Conviction for the crime of grand larceny. Defendant appeals. *Affirmed.*

Chas. E. Miller and W. W. Bixby, for Appellant.

Proof of handwriting by comparison with other handwriting not relevant to any issue, aside from similarity with that in question, is not permissible under the laws of Idaho. (Wharton's Criminal Evidence, sec. 555; *Castor v. Bernstein,* 2 Cal. App. 703, 84 Pac. 244; *Moore v. United States,* 91 U. S. 270, 23 L. ed. 346; *Bane v. Gwinn,* 7 Ida. 439, 63 Pac. 634.)

A witness cannot be impeached on collateral matters, or upon matters not at all material to the issue. (Wharton's Criminal Ev., secs. 482–484; *Hilbert v. Spokane etc. R. R. Co.,* 20 Ida. 54, 60, 116 Pac. 1116; *Western Union Oil Co. v. Newlove,* 145 Cal. 772, 79 Pac. 542; *State v. Deal,* 41 Or. 437, 70 Pac. 532.)

If, by proof of an *alibi,* a defendant is able to raise a reasonable doubt as to his being at a certain place about the time in question he is entitled to an acquittal. (*State v. Conway,* 55 Kan. 323, 40 Pac. 661; *People v. Dick,* 32 Cal. 213; *State v. Mackey,* 12 Or. 154, 6 Pac. 648; *State v. Porter,* 74 Iowa, 623, 38 N. W. 514; *Deggs v. State,* 7 Tex. App. 359.)

The judge must not charge the jury in respect to matters of fact, and, besides, does not state the law correctly in instruction No. 6. (*State v. Walters,* 7 Wash. 246, 34 Pac. 938, 1098; *State v. Bliss,* 27 Wash. 463, 68 Pac. 87.)

The presumption that the person found in possession of recently stolen property is the thief, is not a presumption of law, but one of fact. There is no legal rule on the subject; but much depends on the nature of the property stolen and the circumstances of each particular case. (*Smith v. State,* 58 Ind. 340; *State v. Hodge,* 50 N. H. 510; *State v. Jennett,* 88 N. C. 665; *Stover v. People,* 56 N. Y. 315; *Bellamy v. State,* 35 Fla. 242, 17 So. 560; *Ingalls v. State,* 48 Wis. 647, 4 N. W. 785; *Jones v. State,* 26 Miss. 247; *State v. Pomeroy,* 30 Or. 16, 46 Pac. 797; *State v. Walker,* 41 Iowa, 217; *People v. Fagan,* 66 Cal. 534, 6 Pac. 394; *Considine v. United States,* 112 Fed. 342, 50 C. C. A. 272.)

The burden of proof does not shift on the establishing of a *prima facie* case by the state, but continues on the state

throughout the trial and until the verdict is rendered, and defendant's guilt is established beyond a reasonable doubt. (12 Cyc. 379; *People v. Perini,* 94 Cal. 573, 29 Pac. 1027; *State v. Schweitzer,* 57 Conn. 532, 18 Atl. 787, 6 L. R. A. 125; *Trogdon v. State,* 133 Ind. 1, 32 N. E. 725; *State v. Brady* (Iowa), 91 N. W. 801; *People v. McWhorter,* 93 Mich. 641, 53 N. W. 780; *State v. Hardelein,* 169 Mo. 579, 70 S. W. 130; *Davis v. State,* 54 Neb. 177, 74 N. W. 599; *People v. Downs,* 123 N. Y. 558, 25 N. E. 988; *State v. Carland,* 90 N. C. 668; *Turner v. Commonwealth,* 86 Pa. St. 54, 27 Am. Rep. 683; *Agnew v. United States,* 165 U. S. 36, 17 Sup. Ct. 235, 41 L. ed. 624.)

J. H. Peterson, Attorney General, T. C. Coffin, and E. G. Davis, Assistants, for Respondent.

*Prima facie* the value of a check which has become the subject of larceny is the amount of money for which it passed current, or its face value. (*State v. Hinton,* 56 Or. 428, 109 Pac. 24; *Pyland v. State,* 36 Tenn. (4 Sneed) 357; *State v. Collins,* 49 La. Ann. 1198, 22 So. 357; *Peterson v. State,* 6 Ga. App. 491, 65 S. E. 311; *Whalen v. Commonwealth,* 90 Va. 544, 19 S. E. 182.; Rev. Codes, sec. 7053.)

Exemplars of handwriting are admissible in evidence for the sole purpose of comparison with handwriting which is in dispute, when the exemplar is admitted to be genuine or is proved to be such to the satisfaction of the judge. (*Bane v. Gwinn,* 7 Ida. 439, 63 Pac. 634; *State v. Seymour,* 10 Ida. 699, 79 Pac. 825 (dissenting opinion); *Colonel Algernon Sydney's Case,* 9 How. St. Tr. 818; *Horne Tooke's Case,* 25 How. St. Tr. 19; *University of Illinois v. Spalding,* 71 N. H. 163, 51 Atl. 731, 62 L. R. A. 817; 15 Am. & Eng. Ency. of Law, 270 (note 2); *Baker v. Haines,* 6 Whart. (Pa.) 284, 36 Am. Dec. 224; *Moody v. Rowell,* 17 Pick. (Mass.) 490, 28 Am. Dec. 317; *Smith v. Hanson,* 34 Utah, 171, 96 Pac. 1087, 18 L. R. A., N. S., 520.)

When the natural and adequate mode of expression of the defendant, in a criminal action, is not intelligible, he is entitled to an interpreter. In each instance, whether this need

exists, is to be determined by the court. (Wigmore on Evidence, sec. 811.)

It is within the sound discretion of the court to allow the state to inquire into the necessity for an interpreter, when the court has reason to feel that he has been imposed upon. (3 Ency. of Evidence, 807.)

All the instructions upon a particular point must be considered together in determining whether or not an instruction is misleading. (*People v. Bernard,* 2 Ida. 193, 10 Pac. 30; *State v. Bond,* 12 Ida. 424, 86 Pac. 43.)

Where instructions fully and fairly state the law upon the questions involved it is not error for the court to refuse further instructions requested by the state or the defendant. (*United States v. Camp,* 2 Ida. 231, 10 Pac. 226; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60.)

When the state has proved such a case as would sustain a verdict of guilty, that is to say, has proved its case to the satisfaction of the jury beyond a reasonable doubt, and the defendant offers evidence, the burden is upon him to prove facts sufficient to create, in the minds of the jury, a reasonable doubt as to his guilt. (2 Thompson on Trials, 2d ed., sec. 2436, p. 1708; *State v. Thornton,* 10 S. D. 349, 73 N. W. 196, 41 L. R. A. 530; 2 Am. & Eng. Ency. of Law, 56; *Flanagan v. People,* 214 Ill. 170, 73 N. E. 347; *State v. Howell,* 100 Mo. 628, 14 S. W. 4; *Cochran v. State,* 113 Ga. 726, 39 S. E. 332; *Kirksey v. State,* 11 Ga. App. 142, 74 S. E. 902; *Commonwealth v. Choate,* 105 Mass. 451; *Wilburn v. Territory,* 10 N. M. 402, 62 Pac. 968; *State v. Maher,* 74 Iowa 77, 37 N. W. 2; *State v. Brauneis,* 84 Conn. 222, 79 Atl. 70; *State v. Reitz,* 83 N. C. 634; *State v. Jackson,* 36 S. C. 487, 31 Am. St. 890, 15 S. E. 559; *Pate v. State,* 94 Ala. 14, 10 So. 665; *State v. Waterman,* 1 Nev. 543; *State v. Lee,* 1 Boyce (Del.), 18, 74 Atl. 4; *State v. Webb,* 6 Ida. 428–435, 55 Pac. 892.)

The unexplained possession of recently stolen property is a circumstance tending to incriminate the accused, and where the jury believe that the accused had possession of recently stolen property and the accused denied such possession, the same rule is true. (*People v. Fagan,* 66 Cal. 534, 6 Pac. 394;

*State v. Graves,* 72 N. C. 482; *State v. Drew,* 179 Mo. 315, 101 Am. St. 474, 78 S. W. 594; *Goldstein v. People,* 82 N. Y. 231; *State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034; *State v. Sanford,* 8 Ida. 187, 67 Pac. 492.)

BUDGE, J.—The defendant and appellant herein was, on the 2d day of May, 1914, convicted of the crime of grand larceny in the district court of the first judicial district in and for Shoshone county, and on the 5th day of May, 1914, was sentenced to serve an indeterminate term of imprisonment in the state penitentiary for not less than one nor more than fourteen years. This appeal is from the judgment and from the order overruling defendant's motion for a new trial.

The facts in this case, briefly stated, are about as follows: John Bogris, the defendant below and appellant here, together with his brother Tony Bogris, George Paragos, Anton Chukas, Gust Drakos and Pete Drakos, comprised a section gang employed by the Chicago, Milwaukee & St. Paul Railway Company at Falcon, Shoshone county. On the night of December 26, 1913, George Paragos was employed as a track walker by said railway company, and his duty as such track walker required him to walk one and one-half miles east and three and one-half miles west of the section-house where these men lived. Paragos began work at 6 o'clock in the evening and finished at 5 o'clock in the morning. On this evening when Paragos went to work his suitcase was under the bed in the room where he slept, and where all of the other employees slept, with the exception of Tony Bogris, who was the section foreman, and had a separate room in the same shack or building.

At 5 o'clock in the morning when Paragos came off duty and reached the bunk-house he found his coemployees already up, and learned from them that a burglary had been committed during the night; that two suitcases, one of which belonged to Paragos, and two pairs of trousers, one of which belonged to the appellant, had been stolen. A search was instituted, tracks were followed, and later the two suitcases were found at the bake-house near the section-house in which these men

lived. Both of the suitcases had been cut open and three pay checks belonging to George Paragos had been taken from his suitcase. The trousers were subsequently found, and there was testimony to the effect that the pockets of the same were cut and that certain moneys were taken therefrom.

The pay checks in question had been delivered to Paragos by the Chicago, Milwaukee & St. Paul Railway Company for wages earned during the months of October and November, and either September or August, and were for the following amounts, $62.37, $52.30 and $43.90, respectively. At the time of the theft of these checks they were not indorsed.

On February 7, 1914, about forty-three days after the checks were stolen, John Bogris, the defendant below and appellant here, went to Missoula, Montana, arriving there in the evening. Practically at the same time that Bogris reached Missoula, Warren R. Shopp cashed two pay checks of the Chicago, Milwaukee & St. Paul Railway Company, one for $62.37 and the other for $43.90. Upon the trial of this cause Shopp identified Bogris as the man who presented the checks to him and who indorsed the same by writing thereon the name of Paragos, the complaining witness. At the same time that the two checks above referred to were cashed, Shopp was asked by the same party to cash a third check of like kind, which, however, was not cashed, for the reason, as stated by Shopp, that he did not have sufficient money on hand in his place of business to cash the third check. Thereafter the defendant was arrested and charged by the information of the county prosecuting attorney with the crime of grand larceny.

Upon the trial of the cause the state offered in evidence, and the same were admitted over appellant's objection, pay checks of the Chicago, Milwaukee & St. Paul Railway Company, marked State's Exhibits "A" and "B," which checks were identified by the witness Shopp as being the identical checks that he cashed for the defendant. The state also offered in evidence Exhibit "D," over the objection of appellant, which was a pay check of a similar kind that had been given by Paragos to the defendant a short time prior to the

theft of the checks in question for the purpose of having the same cashed, and which Paragos had directed the defendant to indorse by writing the name ''G. Paragos'' on said time check, which appellant did, and thereafter presented the same to the manager of the Western Commissary Company at Avery, Idaho, who cashed the same.

The state, for the purpose of proving that the indorsements on the back of the checks Exhibits ''A'' and ''B'' were made by the defendant, and to corroborate the testimony of Shopp, introduced Exhibit ''D''; and to further identify the indorsements upon Exhibits ''A'' and ''B'' the state offered, and was permitted to introduce, a trip pass issued by the Chicago, Milwaukee & St. Paul Railway Company and used by the defendant on his trip from Falcon, Idaho, to Missoula, Montana. The signature upon the trip pass was positively identified by D. L. McKay, as well as by other witnesses, as the signature of the defendant. The pass was in regular form and marked State's Exhibits ''E,'' ''F'' and ''G.'' The payrolls of the Chicago, Milwaukee & St. Paul Railway Company for the months of September and November were shown to the defendant prior to the trial, who identified his signature thereon. These payrolls were also offered by the state and admitted, marked State's Exhibits ''H'' and ''H-1.'' The purpose that the state's attorney had in introducing these various exhibits was to prove that the indorsements on Exhibits ''A'' and ''B'' were in the handwriting of the appellant. To the introduction of all of these exhibits, heretofore referred to, the able counsel for appellant objected and assigned the same as error. There are numerous assignments of error to the introduction of these exhibits, which we will not undertake to discuss separately, because we think they might all be considered together, and we will so discuss them.

The first contention made by counsel for appellant is that Exhibits ''A'' and ''B'' should not have been admitted in evidence without proof of their execution and genuineness. Sec. 7053, Rev. Codes, provides:

''If the thing stolen consists of any evidence of debt, or other written instrument, the amount of money due thereupon,

or secured to be paid thereby, and remaining unsatisfied, or which in any contingency might be collected thereon, or the value of the property the title to which is shown thereby, or the sum which might be recovered in the absence thereof, is the value of the thing stolen."

We think the general rule to be, that when the larceny of a certain check for a certain amount of money is charged, no proof of the actual value is required, the law presuming that the face value is the actual value. In this instance there was no question so far as the value of these checks to the thief was concerned, who experienced little trouble in procuring the face value of the same. For the purpose of establishing the value of the checks stolen, we do not think that it was incumbent upon the state to offer proof of their due execution by the officers of the company by whom they were issued; neither was it necessary for the state to prove the fact that they were never indorsed by the payee.

The serious question for our consideration is what we will designate as the remaining four assignments of error, which all go to the introduction of the exhibits mentioned for the purpose of comparison of handwriting, Exhibits "A" and "B" being the checks cashed at Missoula, Exhibit "D" being the check cashed by the appellant at the request of Paragos, Exhibits "E," "F" and "G" being the railroad pass on which appellant traveled to Missoula, Montana, and Exhibits "H" and "H-1' being the payrolls.

In the case of *Bane v. Gwinn,* 7 Ida. 439, 63 Pac. 634, this court said:

"In this state, in an action involving the genuineness of a signature, only such papers as are admitted in evidence in the case for *other purposes,* and such as are *admitted to be genuine,* should, except in very exceptional cases, be admitted for the purpose of comparison." (See, also, *State v. Seymour,* 10 Ida. 699, 79 Pac. 825.)

Exhibits "A" and "B" were admitted in this case in the first instance, not for the purpose of comparison of handwriting, but for the purpose of establishing the crime committed. It was the only method that could be adopted in order to prove

whether or not the crime of larceny had been committed, and if so, whether it was grand or petit larceny. It therefore follows that Exhibits "A" and "B" were properly admitted for this purpose, and once being properly admitted, become competent evidence for all purposes.

The indorsement on Exhibit "D" made by the defendant was admitted by him to have been made, as testified to by the state's witnesses, also the signature written upon Exhibits "E," "F" and "G," the railroad pass, was not denied. This signature of defendant was positively identified by the witness McKay, and when compared by the witness, Milton J. Flohr, Vice-President of the First National Bank of Wallace (who from the testimony appears to have occupied the position of cashier and Vice-President for approximately nineteen years) with Exhibits "A" and "B," as well as the other exhibits mentioned, such witness testified that all of the indorsements made upon said exhibits were made by one and the same person.

As stated in the case of *Baker v. Haines,* 6 Whart. (Pa.) 284, 36 Am. Dec. 224: "We conceive it to be very material that strict proof of the genuine or test paper should be first given; that no reasonable doubt should remain on that point; and nothing short of evidence of a person who saw him write the paper, or an admission of being genuine, or evidence of equal certainty, should be received for that purpose."

It would seem to us, taking all of the testimony into consideration touching the admissibility of these exhibits which were offered for the purpose of comparison, it was proven to the satisfaction of the trial judge conclusively that the signature upon these exhibits was genuine, and that it was the signature of the defendant.

In the case of *Bane v. Gwinn,* 7 Ida. 439, 63 Pac. 634, this court, speaking through Chief Justice Huston, says:

"We are inclined, in the absence of any statute establishing a different rule, to hold with the lower court upon this proposition; although we think occasions may arise where the latitude of the rule should be extended."

We think this case could be well said to come under the above rule, this being a case where the checks that had been stolen were the subject of the larceny and were the property of the complaining witness and offered in explanation and confirmation of his testimony. The proof of the larceny might have been sustained in the absence of the indorsements, and had it been established by the state beyond a reasonable doubt that the defendant stole the checks, even though he had not indorsed the same, still he would have been guilty of the crime of larceny. There is nothing in the record that is seriously in contradiction of the testimony to the effect that the defendant indorsed Exhibits "A" and "B," offered and received in evidence in this case, and that he secured the money represented by the checks.

We have therefore reached the conclusion that the exhibits were properly introduced and that the court committed no error in permitting the same to be used in the trial of this cause for the purpose of comparison of handwriting.

Defendant's counsel complains and assigns as error the action of the court in permitting the county attorney to call certain witnesses during the trial for the purpose of proving that the appellant did not require the services of an interpreter. It appears from the record that when the defendant was called as a witness on his own behalf and was requested by his counsel to be seated, he made the remark that he "did not understand," whereupon the court asked the following question: "This man wants an interpreter?" to which the county attorney responded that "he does not need an interpreter; he talks English," and to which defendant's counsel replied, "I always talked to him through an interpreter. He does not talk English to me," and to which the court responded, "Well, call Tony." Witness Tony had theretofore been used as an interpreter during the trial of the cause. Later on the county attorney, in the course of the trial, called three witnesses who testified in substance that the appellant talked the English language without any impediment, except the foreign accent common to all persons of his nationality. It may have been, possibly would have been, the better prac-

tice had this testimony been offered without the hearing of the jury. The question of whether or not the witness required an interpreter was a question for the court, but counsel for appellant failed to request the court to pass upon this question without the presence of the jury, and we do not believe that any substantial right of the defendant was jeopardized by reason of the action of the court in this respect. When counsel for defendant takes the position that his client is unable to speak the English language, he puts in issue that question and it is subject to contradiction. The state cannot be deprived of the right to cross-examine a witness by the mere statement that he does not speak the English language, and if it is afterward established that he does speak the English language and that he understands it, he cannot take advantage of his conduct in this respect and secure any advantage in this court.

In this connection counsel for the defendant complains of instruction No. 10, which is to the effect that "if any witness wilfully testified falsely as to any material fact you (the jury) are at liberty to disregard the entire testimony of such witness," etc., except his testimony be corroborated by other and reliable witnesses. Counsel urges that the jury applied this instruction to the testimony offered by the state touching the knowledge or lack of knowledge upon the part of the defendant of the English language, and that being an immaterial issue in the case, and there being no further explanation of this instruction made by the court, the defendant suffered thereby. We do not think, in view of all the instructions given by the court, that the jury could possibly have taken that view of this instruction, but considered and applied this instruction generally to all of the witnesses who testified for the defendant and the state. No doubt had counsel for defendant offered an instruction in explanation of the one given by the court the same would have been given. Having failed to do so, he ought not to be heard to complain.

Counsel for appellant assigns as error the conduct of the prosecuting attorney in making the following statement to the jury: "The convincing fact is that the three checks were

cashed in Missoula when the defendant was there.'' From
the record this is absolutely established. The checks were
cashed in Missoula, the very evening, and within a very short
time after the defendant arrived there. The county attorney
did not say that these checks were cashed by the defendant,
but did say that the checks were cashed in Missoula when the
defendant was there. There is no merit in this contention.

We will next consider propositions 5 and 7 of appellant's
brief, which attack instruction No. 8 as given by the court
at the request of the state, and involve the question of the
burden of proof, which is as follows:

"Where the state proved such a case as would sustain a
verdict of guilty, and the defendant then offers evidence, the
burden of proof is on said defendant to make out his defense,
and when the proof is all introduced then the primary ques-
tion is, in the light of all the evidence, is the defendant guilty
beyond a reasonable doubt.''

The appellant contends that under this instruction the bur-
den of proof was shifted from the state to the defendant.
We do not so understand the instruction. As we construe the
instruction, the court says that it is incumbent upon the state
to prove the defendant guilty beyond a reasonable doubt, and
when the state has done that, if the defendant offers proof in
support of his defense of *alibi,* it is incumbent upon him to
introduce such proof, not to establish the *alibi* beyond a rea-
sonable doubt, but merely to offer sufficient proof to raise a
reasonable doubt in the minds of the jury as to his guilt. As
stated in sec. 2436, Thompson on Trials, 2 ed., vol. 2, p. 1708:

"The burden of proving it (an *alibi*) certainly cannot be
upon the State; and if it does not rest upon the defendant,
upon whom does it rest? Certainly not on the judge or the
court crier. The courts which so reason seem to forget that
the *burden* of proof—which is merely another name for the
*necessity* of proof—is one thing, and that the *quantum* of
evidence to sustain the burden is another thing. Certainly
the burden of establishing this defense is upon the defendant,
in spite of all the casuistry by means of which judges have
led themselves to the contrary conclusion. Suppose the de-

fendant is indicted for a crime committed at a given date in St. Louis, and his defense is that on that date he was in Chicago. If he is not to prove this, by whom is it to be proved? Is the State to undertake the task of proving that he was not in ten thousand different places at the time when the crime was committed? But upon the most unshaken grounds, this burden is sustained, and an adequate *quantum* of proof produced by the defendant, when he succeeds in raising a reasonable doubt in the minds of the jurors as to whether or not he was at the place of the crime when it was committed." (*State v. Thornton,* 10 S. D. 349, 73 N. W. 196; 41 L. R. A. 530.)

"The true doctrine seems to be that where the state has established a *prima facie* case, and the defendant relies upon the defense of *alibi,* the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt of the guilt of the accused." (2 Am. & Eng. Ency. of Law, p. 56; *Ackerson v. People,* 124 Ill. 563, 16 N. E. 847; *Carlton v. People,* 150 Ill. 181, 41 Am. St. 346, 37 N. E. 244; *Flanagan v. People,* 214 Ill. 170, 73 N. E. 347; *State v. Howell,* 100 Mo. 628, 14 S. W. 4.)

This court held, in the case of *State v. Webb,* 6 Ida. 428, 55 Pac. 892:

"It is incumbent upon the state to establish the guilt of the defendant in a criminal action to the satisfaction of the jury, by competent evidence, beyond a reasonable doubt. If the defendant relies upon an *alibi* for his defense, the burden of establishing such *alibi* is upon him. If he succeeds, by competent evidence, in raising a reasonable doubt in the minds of the jury as to the fact of his presence at the place and at the time the offense was committed, he is entitled to an acquittal."

Instruction 8, when considered with all the other instructions given by the court in this case, fairly states the law of the case and is not subject to the objections urged.

We will now briefly discuss proposition 6, which deals with instruction 6 given by the court at the request of the state, which reads as follows:

"You are further instructed that if you believe from the evidence beyond a reasonable doubt that the property described in the information was stolen and that the defendant was found in the possession of the property after it was stolen, then such possession is, in law, a strong, incriminating circumstance tending to show the guilt of the defendant unless the evidence and the facts and circumstances thereunder show that he may have come honestly in possession of the same.

"In this connection I further instruct you that if you find from the evidence beyond a reasonable doubt that the property described in the information was found in the possession of the defendant, then in determining whether or not the defendant is guilty you should take into consideration all of the circumstances attending such possession."

To this instruction counsel for appellant takes exception, upon the ground and for the reason, as counsel contends, the court trespassed upon the right of the jury to pass upon all questions of fact, which was in violation of subdiv. 6, sec. 7855, Rev. Codes. Subdiv. 6 provides that the court "must not charge the jury in respect to matters of fact." This instruction, in substance, has been approved by a great number of the courts of last resort in this country, notably by the supreme court of California in the case of *People v. Fagan,* 66 Cal. 534, 6 Pac. 394. (See, also, *State v. Drew,* 179 Mo. 315, 78 S. W. 594.) A full discussion of this question, with numerous citations of authorities, will be found in 101 Am. St. 474.

We are of the opinion that the instruction is also fully supported by the case of *State v. Sanford,* 8 Ida. 187, 67 Pac. 492, which announced "the rule of law that possession of recently stolen property is a circumstance from which, when unexplained, the guilt of the accused may be inferred."

We have carefully examined propositions 8 and 9 of appellant's brief, being the remaining assignments of error urged by the appellant. The former involves instruction

No. 11, given by the court, upon the question of admissions against interest. From a careful consideration of this instruction we have concluded that there is no necessity for a discussion of this assignment of error, and that the court correctly stated the law.

We have given careful consideration to all of the instructions given by the court in this case, as well as those offered by the defendant and refused by the court, and we are of the opinion that the instructions given by the court fully and fairly state the law on all of the important questions involved in this case and that there is no error in the record.

The judgment of the trial court is affirmed.

Sullivan, C. J., and Truitt, J., concur.