(February 22, 1927.)

STATE, Respondent, v. PAUL PATE, Appellant.

[253 Pac. 623.]

BURGLARY — POSSESSION OF RECENTLY STOLEN PROPERTY — EVIDENCE INSUFFICIENT.

1. Evidence in prosecution for burglary *held* insufficient in failing to connect defendant with the crime.

2. Where breaking and entry is proved, state may show defendant's unexplained possession of recently stolen property as

tending to connect him with burglary, but such proof does not raise presumption of guilt; being merely evidence from which jury may convict.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Defendant was convicted of burglary in the first degree, and appeals. *Reversed and remanded.*

Turner K. Hackman, for Appellant.

The court erred in pronouncing judgment on defendant, for the reason that there was not sufficient evidence introduced during the trial to warrant his conviction. (*State v. Sullivan,* 34 Ida. 68, 17 A. L. R. 902, 199 Pac. 647; *State v. Seymour,* 7 Ida. 257, 61 Pac. 1033; *State v. Blank,* 33 Ida. 730, 197 Pac. 821.)

A. H. Conner, Attorney General, and John W. Cramer, Assistant Attorney General, for Respondent.

A general specification of error to the effect that the evidence is insufficient to sustain the verdict, without reciting the particulars in which the alleged insufficiency consists, does not comply with the requirements of C. S., sec. 9068; and under such general specification of error the court will not review the evidence in the record to determine whether or not it is sufficient to sustain the verdict. (*State v. Johnson,* 39 Ida. 440, 227 Pac. 1052; *State v. Sayko,* 37 Ida. 430, 216 Pac. 1036; *State v. Maguire,* 31 Ida. 24, 169 Pac. 175; *State v. Snook,* 34 Ida. 403, 210 Pac. 494.)

Publisher's Note.

2. Possession of stolen property as evidence of burglary, see notes in 19 Ann. Cas. 1281; 12 L. R. A., N. S., 199. See, also, 4 R. C. L. 440.

See Burglary, 9 C. J., sec. 127, p. 1070, n. 75, p. 1071, n. 76, 77; sec. 132, p. 1076, n. 26; sec. 146, p. 1083, n. 80.

Where it appears that a burglary was in fact committed, the possession of recently stolen property by the accused is a circumstance from which, in connection with all the evidence, the jury may presume, as a matter of fact, that he committed it. (Underhill's Crim. Evidence, 3d ed., sec. 573.).

VARIAN, Commissioner.—Defendant was convicted of the crime of burglary in the first degree and appeals from the judgment and an order denying a motion for a new trial.

The information charges that on or about the twenty-seventh day of January, 1925, about 3 o'clock A. M. of said day, the defendant did wilfully, wrongfully, feloniously and burglariously enter a certain store ·in Twin Falls, therein described, with intent to commit larceny. The defendant offered no evidence and the cause was submitted upon the state's evidence alone.

[1] The record discloses the following facts: A police officer, about 2:30 or 3 o'clock on the morning of January 28, 1925, saw an empty automobile across the street from the Golden Rule Store building in Twin Falls. From a distance of half a block, he saw a young fellow run across the street from the store building to the car. The officer stepped out into the street to better observe the person running toward the car, and saw another young fellow run out of the side door of the Golden Rule Store to the car. When first seen, both men were carrying "dry goods." The car moved off and its occupants escaped without being identified by the officer. Later investigation showed that a hole had been cut in the panel of a door leading from the furnace-room of the building by means of which access was gained to the lock on the door. The outside door leading to the furnace-room was not fastened. When the stock was examined, it was found that shoe boxes had been taken down and merchandise removed, particularly a leather vest, underwear, shirts and socks.

Louis Kemble was arrested about midnight on February 21, 1925, wearing a leather vest, admitted in evidence as state's exhibit "B." At the trial he testified that he procured the vest from the defendant about 10:30 or 11 o'clock that evening, paying him therefor by check of that date for $3.50, payable to order of defendant. The check is in evidence, and when confronted by the police, defendant admitted receiving and indorsing it, but denied that it was given in payment for the vest in evidence, asserting that the check represented a loan. The vest was delivered to Kemble at defendant's room where he slept.

One Achenbach, who roomed over Moore's repair-shop in Twin Falls, where the defendant also roomed, testified that defendant was in his room at 5 o'clock in the afternoon until 7:30 the evening of January 27th, during which he and four or five others, including the defendant, had supper, after which they all left the room. Achenbach returned after 12 o'clock midnight, but did not go to bed until about 6 o'clock the morning of January 28th. Defendant came to Achenbach's rooms with one Delmer Hines at 4:25 or 5:25 that morning. Hines went to bed at once, and the defendant shortly thereafter. Defendant told the officers that he was at Eden at a dance the night of January 27th, that he returned to Twin Falls about midnight, had supper at a noodle joint, and went to bed about 1 o'clock the next morning.

When arrested, a suit of underwear he was wearing was taken from him by the police. He said he had purchased it from Wood's store at Filer from a clerk named Curtis. It appears that that store did not carry underwear of that kind. Curtis positively testified he did not sell this underwear to defendant, and the court refused to admit it in evidence.

The clerk having charge of the men's department of the Golden Rule Store testified that he observed the condition of the stock of leather vests in the store on the evening of January 27, 1925; that there were about thirty leather vests

comprising eight or nine varieties; that at that time there were two vests of the same style as the state's exhibit "B," a suede leather sport-style vest. There had been originally four in stock, one of which was sold to an employee of the store, who still had it, and one sold to a lady school-teacher. That was size 38, and the one in evidence is size 42, so they could not be the same. The morning of the 28th of January he checked up and there was but one leather vest of the same style as the one in evidence remaining in the stock. None had been sold except as mentioned herein, On direct examination this witness testified positively, "That is one of the leather vests missing from the store the next morning." On cross-examination he qualified this testimony as follows: "The Van Engelman Company, or Golden Rule Store system, had several stores in that sec- tion; could not say that they did not keep the same vest in stock in the other stores; don't know." In answer to a further question, he answered: "Well, I couldn't say whether it had been purchased from another store or not. It has no mark on it as to that." It is obvious from a careful reading of the testimony that the witness could not identify the vest positively. It was merely like the one missing from the store.

The possession of this leather vest is the only evidence that tends to connect the defendant with the crime charged. The fact that a burglary was committed is clearly estab-. lished, but the evidence fails to sufficiently connect the de- fendant with it. His false statement in regard to selling the vest, the fact that he returned to his room shortly after the robbery, and did not go to bed at 1 o'clock as testified, may have been prompted by a consciousness of wrongdoing. He may have wrongfully acquired the vest by theft, by robbery from the person of another; by burglarizing another store at a different time; or it may have come into his possession from one who did burglarize the store in question, or who had stolen it elsewhere, with knowledge, acquired after that fact, that it was stolen property. There might be a con-

sciousness of guilt in all of these instances. His actions, therefore, do not necessarily assist in the identification of the vest, nor prove his guilt of the particular crime charged.

[2] Where the breaking and entry is proved, as in this case, "if the property is sufficiently identified as stated at the time of the breaking," the state may show the unexplained possession of the recently stolen property as tending to connect the defendant with the burglary. (9 C. J. 1070.) Such proof "does not raise a presumption of guilt as a matter of law, a legal presumption, but is merely evidence from which the jury may convict." (9 C. J. 1083.)

The other assignments of error have been considered and no error other than the failure to connect defendant with the crime appears from the record.

It is recommended that the judgment be reversed, and the cause remanded with instructions to grant a new trial.

Brinck, C., concurs.

The foregoing is approved as the opinion of the court, and the judgment is reversed, and the cause remanded with instructions to grant a new trial.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.