[Crim. No. 6334.    Second Dist., Div. Two.    Mar. 18, 1959.]

THE PEOPLE, Respondent, v. NICK CARMEN RUSSO,
Appellant.

748

Gladys Towles Root, Eugene V. McPherson and Robert Barnett for Appellant.

Stanley Mosk, Attorney General, Norman H. Sokolow and Philip C. Griffin, Deputy Attorneys General, for Respondent.

ASHBURN, J.—Appellant was tried contemporaneously upon one charge of burglary (Pen. Code, § 459) and two charges of statutory rape (Pen. Code, § 261, subd. 1). Convicted on all counts and committed to the Youth Authority for the terms prescribed by law defendant appeals from the judgments. Counsel attack sufficiency of the evidence in each instance.

The case was presented somewhat casually on both sides. Evidence supporting the convictions is weak, but settled rules of review forbid interference on our part. ■■■ Upon appeal all evidence and all inferences tending to support the finding of guilt are to be accepted as true and the sufficiency of the evidence tested upon that assumption; the question of reasonable doubt is for the trial court, not the appellate tribunal. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Poindexter,* 51 Cal.2d 142, 148 [33 P.2d 763]; *People* v. *Jackson,* 167 Cal.App.2d 270, 271 [334 P.2d 114].)

■■■ The burglary charge. The evidence shows without dispute that the apartment of Mr. Guy Gambaro at 310 South Bunker Hill Street, Los Angeles, was burglarized between 6 p.m. and 10:45 p.m. on October 8, 1957. An electric clock, a radio, a suit of clothes, a pair of shoes and a Gillette razor

were stolen. The question now presented is whether defendant was connected with the crime by substantial evidence, direct or circumstantial. Defendant's possession of the electric clock and radio is admitted. He sold them to Louis Stephan about the middle of October, 1957, for $6.50. Their values are not established by the evidence but they were before the trial judge as exhibits and it is a fair inference that this sale was at a price substantially below their real value; if that were not the case the defense doubtless would have shown the true situation. This sale was made at about 1:30 a.m. to 2:30 a.m. in front of a hotel at Third and Hill Streets, where defendant lived. He had known Stephan for about six months and on this occasion accosted him and offered to make the sale; neither one of them mentioned the source from which defendant got the articles. The clock, radio, etc., were found by the police in Stephan's apartment on December 9, 1957. After defendant's arrest, which was on that day, the officers talked with him. He initially denied the charge of burglary and when shown the clock and radio said he had never seen them before. Later on the same day he retracted this denial and said that he had gone to the apartment at 310 South Bunker Hill with Nick Hust and Gerald Zalcowski; he and Nick had forced the door to Apartment 3 and had taken the radio and clock, also a suit of clothes and a pair of shoes; he sold the radio and clock to Louis Stephan for six or seven dollars. At the trial defendant testified that he got the radio and clock from Nick (last name unknown to him), paid him four dollars for them and resold to "this other guy called Lou" for $6.50. Of course the trial judge was entitled to reject the testimony that he bought the articles from Nick while believing and accepting the statement that he sold them to "Lou" for $6.50. (See *Bechtold* v. *Bishop & Co., Inc.*, 16 Cal.2d 285, 291 [105 P.2d 984]; *Nevarov* v. *Caldwell*, 161 Cal.App.2d 762, 777 [327 P.2d 111]; *Estate of Pelton*, 140 Cal.App.2d 512, 516 [295 P.2d 483].)

While mere possession of stolen property will not sustain a conviction for its theft, it is also true, as stated in *People* v. *Wissenfeld*, 36 Cal.2d 758, 763 [227 P.2d 833], that "such possession plus 'slight corroborative evidence of other inculpatory circumstances' will suffice." *People* v. *Citrino*, 46 Cal.2d 284, 288 [294 P.2d 32] : "Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the

accused tending to show his guilt. [Citations.] ██ When possession is shown, however, the corroborating evidence may be slight [citations], and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary. [Citations.] Defendant's explanation that Cotelli gave him the property was not contradicted by any witness, but in view of defendant's own use of that name and the fact that he did not know where Cotelli was at the time of the trial, the jury could reasonably conclude that Cotelli and his gift were both fictitious. [Citation.] Other corroborative evidence was his false statement to Astengo that he received the property from his father [citations], his selling tools and equipment worth more than $150 for $25.''

██ In the present instance there appears at first evasive conduct, then express admission of guilt on the part of defendant; also a failure to show that his possession was honestly obtained (because that part of his testimony was rejected by the trier of facts); sale of the stolen property in the middle of the night for a price which was itself suggestive of ''hot'' merchandise. As previously stated the evidence is sufficient to support the burglary conviction.

As to the two counts of rape. June Marie Schaefer was 14 years of age. She and another girl, Linda King, as they walked along San Fernando Road in North Hollywood, sought and accepted a ride in defendant's automobile on the morning of January 17, 1958. Defendant had with him a friend named Ernie Torres. The four juveniles (defendant was aged 19 years) drove around for awhile and then went to defendant's home at about 4 p.m. According to June's testimony Linda and Ernie left and went to a motel. June stayed there the night of the 17th and the following night. After defendant's parents had retired June and defendant went to bed together in the adjoining bedroom, spent the night there and had sexual intercourse; the same thing happened the next night. Defendant testified that June arrived at the house about 2 p.m. and stayed about four hours on that first day; she was not there at night and did not sleep or at any time have sexual intercourse with him; his mother, stepfather, sister and brother were at home that night. He also said that although June came to the house the next morning she did not stay until night or sleep or have intercourse with him.

Officer Charles E. Eberling, of the Los Angeles Police Force, testified that on January 22d. he talked with defend-

ant who said he had taken a couple of "goof" balls earlier in the evening and the officer was not sure whether he was under the influence of a narcotic; he said "it could be just that he was scared." However, defendant talked voluntarily, asserting that he was innocent of burglary, but added that he had a difficult problem, "that he had been sleeping and having sexual intercourse with a girl by the name of June Schaefer, and that he didn't know how he was going to handle this, and he also stated at the time that he had a hotel room in downtown Los Angeles, and he had seen this girl at his own residence, I believe on Blix in North Hollywood. . . . He stated that he was very perplexed over the fact that there were several Lesbians had taken his girl friend away from him. . . . Well, there was one other statement he made. He said that he felt he should have some type of mental doctor or something, counsel with him on his own problems, but I would say that he was referring to this sexual situation." The fact that defendant was under the influence of a narcotic, if he was, did not *per se* render his voluntary statements inadmissible (*People* v. *Waack*, 100 Cal.App.2d 253, 257 [223 P.2d 486]), and appellant's counsel make no such contention.

It is argued that the testimony of the girl June is inherently incredible and should be rejected on that ground as a matter of law. Counsel say in their brief: "Then we find that the bed the prosecutrix slept in was in the appellant's bed room, next door to the bedroom of Appellant's parents, while the parents were there; that she stayed in that bed and bedroom all night on two occasions, two succeeding nights; that when she got up in the morning she saw Appellant's mother. In no normal family would anything of such a nature have occurred. In no normal family would a boy of Appellant's age have brought a girl home to bed in the presence of his family. It is utterly fantastic to believe that the events occurred as they were testified to by the prosecutrix. The prosecution presented no evidence, other than the girl's testimony, that she stayed at the Appellant's house on either night. The prosecution did not produce either June's girl friend or Appellant's boy friend to show that they went away and left June at Appellant's house. The prosecution did not seek to introduce any evidence that Appellant's was other than a normal family." We quite agree that the picture is not one of a normal family, but the evidence of the prosecutrix, as well as defendant's statement to Officer Eberling, show an abnormal family home as well as an abnormal witness. We

cannot reject June's testimony on that ground, however, for the rule of *People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758], prevails: "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" See also *People* v. *Wein*, 50 Cal.2d 383, 399 [326 P.2d 457]. For comparable situations see *People* v. *Bartol*, 24 Cal.App. 659, 661 [142 P. 510]; *People* v. *Whitney*, 34 Cal.App. 737, 738 [168 P. 1052].

The defense of alibi put mother to the test, as is so often the case. The stepfather, sister and brother were not called as witnesses nor was their absence explained. But defendant's mother, Mrs. Lucille Balteskolis, testified that June Schaefer left the house after lunch on the 17th and did not return until the next morning when she stayed only a few hours. On that first night Mrs. Balteskolis, so she said, went into defendant's room, saw him sleeping and alone. The witness also added by way of good measure that June told her on the following day that she was 18 years old. The alibi testimony was rejected by the veteran trial judge (there was no jury). As we said in *People* v. *Baserto*, 162 Cal.App.2d 123, 125 [327 P.2d 558]: "[T]he court was not required to accept the alibi testimony though not directly contradicted by another witness. In other words, the judge had the prerogative of disbelieving defendant and his witness. (*Odenthal* v. *Lee*, 113 Cal.App.2d 666, 669 [248 P.2d 937]; *Huth* v. *Katz*, 30 Cal.2d 605, 608-609 [184 P.2d 521].)"

Each judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.