435 P.2d 914

STATE of Idaho, Plaintiff-Respondent,

v.

Jack DARRAH, Defendant-Appellant.

STATE of Idaho, Plaintiff-Respondent,

v.

Shannon DARRAH, Defendant-Appellant.

Nos. 9961, 9962.

Supreme Court of Idaho.

Jan. 10, 1968.

Church, Church & Snow, Burley, for defendants-appellants.

Allan G. Shepard, Atty. Gen., and Thomas E. Frost, Asst. Atty. Gen., Boise, for plaintiff-respondent.

TAYLOR, Chief Justice.

Defendants (appellants) each were charged by separate informations with the crime of burglary in the first degree. The informations charged that defendants acting in concert broke and entered a building belonging to McCarty's, Inc., located at 1132 Miller Avenue, in Burley, Cassia County, Idaho, in the nighttime, specifically between 6:00 p. m., Saturday, February 5, 1966, and 7:30 a. m., Sunday, February 6, 1966, with the intent then and there to commit the crime of larceny. The actions were consolidated and tried to a jury in September, 1966, resulting in a verdict of guilty of first degree burglary against each of the defendants. Defendants' motion for a new trial was denied and they brought this appeal.

McCarty's, Inc., was a scrap dealer located in Burley, Idaho; the business premises were closed for the weekend at 4:00 o'clock, p. m., Saturday, February 5, 1966, and reopened at 7:00 to 8:00 a. m. on Monday, February 7, 1966. During the closed period no employee of the company was on the premises. At the opening Monday morning it was discovered the building had been broken into and 500 to 700 pounds of scrap metal, including a coffee bean sack containing copper wire, was missing. Burley officers made inquiry of scrap dealers in other communities and were advised that 500 pounds of scrap metal had been sold to United Wire & Metals, Inc., at Nampa, Idaho, on Sunday, February 6, 1966.

The manager of the Nampa company, Mr. Ekart, testified that one of the defendants by phone offered to sell scrap metal to him on Sunday morning; that about noon on Sunday both defendants came to his place of business in Nampa and sold to him over 600 pounds of metal, including copper wire in burlap bags. One of the bags of copper wire charged to have been sold by defendants to Mr. Ekart was introduced in evidence as plaintiff's (respondent's) exhibit A. This exhibit was a burlap sack containing various types of copper wire, some loose and some balled together. The exhibit weighed 140 pounds; the outer bag was torn near the bottom and a large red "2" was painted on one side. At the top of the sack and piercing its edge in several places were the remnants of a wire coat hanger. On top of the wire inside the sack was a second, empty, burlap bag.

On Saturday, February 5th, a Mrs. Campbell sold to McCarty's a quantity of metal, including a sack of copper wire weighing 86 pounds. Wayne Shell, McCarty's foreman, unloaded the bag from Mrs. Campbell's truck and in the process ripped a hole near the bottom of the bag. The bag was described as a coffee bean sack of a type used by none of McCarty's customers, except Mrs. Campbell. At the time the sack was in McCarty's possession it was closed by a copper wire sewn through the burlap at the top; there was no numeral or symbol painted on it, and the sack had not been opened at McCarty's. Mr. Shell, Mrs. Campbell and a Mr. Moore, another employee of McCarty's, identified exhibit A as the sack of copper wire Mrs. Campbell had delivered to McCarty's. Ekart was reasonably sure, but not positive, that exhibit A was the same bag of metal which he had purchased from defendants in Nampa. His identification was based primarily on the red "2" painted on the side of the sack. Ekart did not open any of the sacks received from defendants, but immediately trucked them over to United's Caldwell office. Mr. Ekart being advised of the investigation under way by the officers, called the Caldwell office and requested that the wire brought to that office from Nampa on Sunday, be not processed. On Monday or Tuesday following, officer Appleton of the Nampa police and Moore went to the Caldwell office of United and there Moore identified the only full

sack of metal there as the one McCarty's had purchased from Mrs. Campbell on Saturday. At that time the sack was open, untied and ready to be sorted. The copper wire with which Mrs. Campbell's sack had been sewn was still hanging from one ear of the sack, and Moore recognized it as the same tying wire, and the sack bore a red "2" painted on the side. After the identification Appleton removed the old tying wire, placed an empty burlap bag on top of the wire, and retied the outside sack with a wire coat hanger. He then took the sack and its contents to his office, from whence it was later delivered to the Burley police.

February 15, 1966, Moore and Mrs. Campbell went to the Burley police headquarters and again identified the bag brought there from Nampa as the same one which Mrs. Campbell had sold to McCarty's, even though the copper tie-wire had been replaced by a coat hanger and a red "2" had been painted on the side.

In further identifying exhibit A Mrs. Campbell testified that she cut the wire sold by her, by placing it on a chisel—"a cold cut"—mounted in the top of an anvil and striking it with a hammer—"I always do." She identified a piece of battery cable or wire from the exhibit which she said she had cut in that manner. The exhibit contained other pieces cut in the same way, that is, beveled on the side which rested on the chisel and flattened on the opposite side struck by the hammer.

Defendants produced three witnesses— the wife of each defendant, and the mother of both. These witnesses testified that defendants were not in the vicinity where the crime was committed on the weekend of the 5th of February.

Defendants assign as error instruction No. 6 as given by the court.[1] They contend that reference in the second and third paragraphs of the instruction to direct or positive evidence indicated to the jury that the court was of the opinion there was direct or positive evidence in the record before the jury, whereas in fact there was none, and thus tended to mislead or confuse the jury. The record does not contain any direct or positive evidence of the commission of the crime charged by the defendants, and the instruction should have been modified to correspond to the record in the case. However, we do not believe that the jury was likely to have been misled or confused. The jurors were given an explicit definition of direct and positive evidence and were therefore equipped to determine for themselves whether there was any direct or positive evidence of the ultimate fact to be proved, i. e., the actual commission of the burglary by the defendants, and would necessarily limit the language complained of to the proof of the circumstances relied upon by the state. Cf. State v. Hix, 58 Idaho 730, 78 P.2d 1003 (1938). Nonprejudicial error does not constitute ground for reversal. I.C. § 19-3702; Mollendorf v. State, 67 Idaho 151, 173 P.2d 519 (1946);

1. The jury is instructed that there are two classes of evidence recognized and admitted upon trials in courts of justice upon which, if the proof be sufficiently strong and complete a jury may lawfully find an accused person guilty of crime. One class is what the law knows as direct or positive evidence; that is, the testimony of an eye-witness or of eye-witnesses of the commision by a defendant of the crime charged, and the other is what the law knows as circumstantial evidence.

Circumstantial evidence in criminal cases is the proof of such facts and circumstances connected with or surrounding the commission of the crime charged as tend to show the guilt or innocence of the accused. Such facts and circumstances, when taken together with all of the direct and positive evidence in the case, must be sufficiently conclusive to satisfy the jury of a defendant's guilt of the offense charged beyond a reasonable doubt before a defendant can be found guilty.

Circumstantial evidence is legal evidence, and in this case if the facts and circumstances shown by the evidence are, when taken together with all the direct or positive evidence, sufficient to satisfy the jury of the guilt of a defendant beyond a reasonable doubt, then such evidence is sufficient to authorize the jury to find a defendant guilty.

**28**

State v. McLennan, 40 Idaho 286, 231 P. 718 (1925).

 Defendants also contend that instruction 19 as given by the court was erroneous.[2] They contend that the instruction indicated to the jury that the court believed the evidence established the fact that appellants did have possession of stolen property, and that they had a duty to come forward and explain such possession. The instruction is not susceptible to the interpretation urged by defendants. It did not assume possession of stolen property by defendants and expressly preserved their right to refrain from testifying as witnesses. Such an instruction has long been approved in this jurisdiction. State v. Haggard, 89 Idaho 217, 404 P.2d 580 (1965); State v. Jackett, 45 Idaho 720, 264 P. 875 (1928); State v. Pate, 43 Idaho 648, 253 P. 623 (1927); State v. Sullivan, 34 Idaho 68, 199 P. 647, 17 A.L.R. 902 (1921); State v. Bogris, 26 Idaho 587, 144 P. 789 (1914); State v. Sanford, 8 Idaho 187, 67 P. 492 (1902). Instruction No. 3[3] also preserved defendants' right to refrain from testifying.

 Defendants assign instruction 20 as error.[4] We have held this instruction "technically corect," and not erroneous. State v. Koho, 91 Idaho 450, 423 P.2d 1004 (1967). However, in a case such as this, where only two degrees of the crime charged are involved, giving this instruction in the language of the statute would be preferable. I.C. § 19–2105.

 Defendants also contend that the evidence was insufficient to sustain their conviction. They refer to certain conflicts in the testimony of state's witnesses and cite State v. Haynes, 64 Idaho 627, 135 P.2d 300 (1943); State v. Darrah, 60 Idaho 479, 92 P.2d 143 (1939). In both these cases the state had introduced unexplained exculpatory evidence tending to absolve the defendants of guilt. In this case the inconsistency related only to the identification of exhibit A and no evidence was presented by the state tending to establish the innocence of the defendants. Resolution of conflicts in the testimony of witnesses is exclusively within the province of the jury.

2. You are instructed that possession of property recently stolen, if proven, is not evidence sufficient of itself to warrant a conviction. It is merely a circumstance tending to show guilt which taken in connection with other evidence is to determine the question of guilt. If however, the jury believes beyond a reasonable doubt that the property mentioned and admitted in evidence was stolen, and was in the possession of the defendants, or either of them, soon after being stolen, the failure of the defendants to account for such possession or to show that such possession was honestly obtained is a circumstance tending to show guilt; and the defendant is called upon to explain such possession, if such possession has been proved, in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence disclosed any such facts.

In considering whether possession of recently stolen property has been satisfactorily explained, the jury will bear in mind that in the exercise of Constitutional rights, and as heretofore mentioned to you, an accused person need not take the witness stand and testify. Possession may be satisfactorily explained through other circumstances, or other evidence, independent of any testimony of the accused person or persons. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from possession of recently stolen property.

3. The Court instructs the jury that a defendant in a criminal action cannot be compelled to be a witness against himself, and that if he does not claim the right to be sworn and does not testify, that fact does not create any presumption against him and must not be used by the jury to his prejudice.

4. Should the jury find from the evidence that a defendant has committed a public offense charged in the Information, but entertain a reasonable doubt as to which of the two degrees he is guilty, then he can be convicted only of the highest degree of which you have, from the evidence, no reasonable doubt as to his guilt.

Defendants also cite the testimony of their wives and mother. They argue that the testimony of these witnesses being unrefuted establishes that they were not at the scene of the crime at the time of its commission. It was for the jury to determine whether defendants were at the scene of the crime, and actually committed it, from all the evidence in the case. The trier of the facts is not required to accept alibi testimony though not directly contradicted by other witnesses. People v. Baserto, 162 Cal.App.2d 123, 327 P.2d 558 (1958), quoted in People v. Russo, 168 Cal.App.2d 747, 336 P.2d 628 at 631 (1959).

However, the evidence in this case does not suffice to establish burglary of the first degree. For ought that appears in the record, the burglary could have been committed between 4:00 p. m. and sunset on February 5th, or after sunrise on February 6th. Burglary of the first degree is defined as burglary committed in the nighttime, I. C. § 18–1402, and nighttime means the period between sunset and sunrise. I.C. § 18–1404. We judicially notice that the sun set in Burley at approximately 5:50 p. m. on February 5, 1966, and rose at approximately 7:45 a. m. on February 6, 1966. Its evidence does not show that the burglary was not committed before sunset on February 5th, or after sunrise on February 6th and is therefore insufficient to sustain a conviction of burglary of the first degree. The time of day or night when the burglary occurred affects only the degree of the offense. State v. Goodmiller, 86 Idaho 233, 386 P.2d 365 (1963). Where the evidence is sufficient to sustain a conviction of burglary, but is insufficient to establish beyond a reasonable doubt when, with reference to sunrise and sunset, the burglary occurred, it is sufficient to sustain only a conviction of burglary of the second degree. Therefore in this case, the jury's verdict of guilty must be limited to burglary of the second degree.

The judgment is modified by reducing the conviction to burglary of the second degree, and the cause is remanded to the district court with instructions to vacate the judgment convicting the defendants of burglary of the first degree and to enter judgment of conviction of burglary of the second degree, and impose punishment provided therefor, as of the date of the original judgment. State v. Haggard, 89 Idaho 217, 404 P.2d 580 (1965).

SMITH, McQUADE, McFADDEN and SPEAR, JJ., concur.