690 P.2d 293

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Mark Emilio ARAGON,
Defendant-Appellant.**

No. 14771.

Supreme Court of Idaho.

June 22, 1984.

Rehearing Denied Nov. 26, 1984.

Remittitur and Order Nov. 26, 1984.

Robert Fallowfield, Ketchum, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Appellant was convicted of first degree murder in the beating death of eight month old Monique Longoria and was sentenced to death. He appeals both his conviction and his sentence. In addition, we review this case pursuant to our duty under I.C. § 19–2827 to independently review sentences imposing a penalty of death to ensure that those sentences are free from error, and are proportionate and just. We find that no reversible error was committed by the trial court, and we affirm the conviction and sentence.

Viewing the evidence in the record most favorably to the respondent, as we must on appeal, *State v. Barsness*, 102 Idaho 210, 628 P.2d 1044 (1981), the facts adduced at trial are as follows. In early 1982, appellant was living in Ketchum with Teresa Watson and her daughter, Monique Longoria. On April 10, 1982, Watson placed Monique in the bathtub unattended while she and appellant ate lunch. Ten minutes later, appellant went to use the bathroom. Watson testified that about five minutes later she heard a gasp from Monique and loud pounding noises. At that point, Wat-

son went into the bathroom to investigate. She observed appellant sitting on the toilet, with "one hand in the tub like he was splashing water on her." At appellant's direction, Watson left the bathroom and returned to the living room. After a short time, appellant emerged from the bathroom and asked Watson if he should take the baby out of the bathtub. Watson replied in the affirmative. Appellant then reentered the bathroom and then called Watson, indicating something was wrong with the baby. Watson went into the bathroom and observed that the baby was not breathing. She took the baby into the bedroom and performed cardiopulmonary resuscitation. At that point she noticed injuries to the baby's head. She asked appellant to summon an ambulance, but he refused. Watson then ran to summon an ambulance. When she returned, appellant asked her, "What are you going to tell them?" She replied, "I'm going to tell them the truth."

Monique was taken to the local hospital, and, because of her critical condition, she was transferred to a Salt Lake City, Utah, hospital. Doctors there examined her and attempted to revive her, but she died on April 12, 1982. An autopsy was performed. Medical testimony at trial indicated that Monique died from blows to the head, a minimum of two and probably three blows. Testimony indicated that the blows which were inflicted were of a force equal to dropping Monique off a three- or four-story building two or three times. Testimony indicated that the injuries could not have been inflicted accidentally or by the activities of Monique herself.

I

Appellant was convicted of first degree murder by a jury and, after a presentence investigation and an aggravation/mitigation hearing, was sentenced to death. The trial court issued a detailed explanation of the factors that he had considered in mitigation and aggravation. After a detailed discussion of the mitigating circumstances, and upon finding three statutory aggravating circumstances existed beyond a reason-able doubt, the court stated: "The court is unable to find any mitigating circumstances which could overcome the aggravating circumstances and must comply with the legislature's mandate. The court must and does impose the sentence of death on the defendant Mark Emilio Aragon." Appellant asserts numerous errors on appeal.

A.

Appellant first argues that the trial court erred in its instructions to the jury defining "malice" and the elements of first degree murder. He argues that the definitions given to the jury did not sufficiently distinguish between a murder committed with malice, which may be first or second degree murder, and a murder committed with premeditation, deliberation and willfulness, which is always first degree murder. Without sufficient distinction between these elements, appellant argues, a jury may erroneously convict a person of first degree murder, for which the death penalty may be imposed, where the facts of the case support only a second degree murder conviction, with the death penalty unavailable as a form of punishment. If this were to happen, appellant argues, imposition of the death penalty would be rendered unjust and disproportionate, in violation of the eighth amendment of the United States Constitution.

Instruction 23 given by the court defined murder as:

"Murder is the unlawful killing of a human being with malice aforethought.

"Malice is that state of mind manifested by the doing of an unlawful and felonious act intentionally, deliberately, and without legal cause or excuse.

"Malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

The first sentence of the above instruction is taken directly from I.C. § 18–4001.[1] The third paragraph is taken directly from I.C. § 18–4002.[2]

Instruction 25 defined first degree murder as follows:

"Murder in the First Degree is defined in this case as all murder which is perpetrated by any kind of wilful, deliberate and premeditated killing.

"In order to prove the commission of the crime of Murder in the First Degree, each of the following elements must be proved beyond a reasonable doubt:

(a) That a human being was killed;

(b) That the killing was unlawful;

(c) That the killing was done with malice aforethought;

(d) That the killing was willful;

(e) That the killing was deliberate; and

(f) That the killing was premeditated."

Instruction 27 defined second degree murder as follows:

"Murder in the Second Degree is defined in this case as all other kinds of murder.

"In order to prove the commission of the crime of Murder in the Second Degree, each of the following elements must be proved beyond a reasonable doubt:

(a) That a human being was killed;

(b) That the killing was unlawful;

(c) That the killing was done with malice aforethought."

The court then gave the following instruction 28, distinguishing the elements differentiating first and second degree murder:

"As set forth in the preceding instructions on murder, any unlawful killing of a human being with malice aforethought

is murder. If nothing further characterizes the killing, the murder is of the second degree. To constitute the higher offense of murder in the first degree, there must be wilfulness, deliberation and premeditation in addition to malice aforethought.

"Wilfulness means that there was manifested a clear intent to take life.

"Deliberation and premeditation means done with reflection and conceived beforehand and not done upon a sudden heat of passion or other condition precluding the idea of deliberation.

"Premeditation does not require an appreciable space of time between the intention to kill and the killing; they may be as instantaneous as successive thoughts of the mind."

This instruction incorporated parts of the previously mentioned instruction, and also noted the elements set out in I.C. § 18–4003.[3]

■■■ An instruction to the jury that essentially follows the words of a statute normally is not error. "Ordinarily, the language employed by the legislature in defining a crime is deemed to be best suited for that purpose, and error cannot be predicated upon its use in informations and instructions." *State v. Brooks*, 49 Idaho 404, 409, 288 P. 894 (1930); *see also State v. Anstine*, 91 Idaho 169, 418 P.2d 210 (1966). Because these instructions follow the language of the statute, it was not error to give them. Furthermore, the major portion of these instructions was requested by appellant. Particularly, appellant complains of given instruction 28, claiming it gave an improper definition of the terms "deliberate" and "premeditated." However, given instruction 28 is substantially identical to

1. "18–4001. **Murder defined.**—Murder is the unlawful killing of a human being with malice aforethought ...."

2. "18–4002. **Express and implied malice.** —Such malice may be express or implied. It is *express* when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circum-

stances attending the killing show an abandoned and malignant heart."

3. "18–4003. **Degrees of murder.**—(a) All murder which is perpetrated by ... any kind of wilful, deliberate and premeditated killing is murder of the first degree.

....

"(g) All other kinds of murder are of the second degree."

defendant's requested instruction 12. Appellant cannot assert as error on appeal the giving of an instruction which he himself requested. *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Daellenbach v. State,* 562 P.2d 679 (Wyo. 1977).

 The instructions did not blur the distinction between first and second degree murder. Jury instructions must be read in their entirety, as a whole, not in their isolated parts. *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980); *State v. Tisdel,* 101 Idaho 52, 607 P.2d 1326 (1980); *State v. Peterman,* 100 Idaho 269, 596 P.2d 442 (1979). In reading the instructions as a whole, we note that they are internally consistent, and they sufficiently define for the jury the distinction between first and second degree murder. On the one hand, the jury was informed of the definition of murder, and that it involves killing with malice. Malice was defined as a "state of mind" manifested by an intentional or deliberate act. The jury was instructed that malice may be express or implied. These were proper definitions of malice and its interrelationship with the definition of murder.

Further, the jury was instructed that if nothing more than malice, or the intent to do an unlawful act, was proven beyond a reasonable doubt, then the crime could not be first degree murder. The jury was instructed that if it could find beyond a reasonable doubt three other elements—willfulness, deliberation and premeditation—then the defendant was guilty of first degree murder. Malice, the intent to act feloniously, was properly distinguished from willfulness, the intent to take life, premeditation, conceived beforehand, and deliberation, done with reflection. The jury was properly instructed on the additional elements necessary to prove first degree murder, and thus there was no error.

## B.

 Appellant also asserts error in the court's instructions to the jury concerning reasonable doubt. Appellant requested the following instruction:

"When you are convinced beyond a reasonable doubt that the crime of murder has been committed by the Defendant, but have a reasonable doubt whether such murder was of the first or of the second degree, you must give to such Defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree."

*See* I.C. § 19–2105. In *State v. Hunter,* 55 Idaho 161, 39 P.2d 301 (1934), we noted that such an instruction, if requested, should be given to inform the jury of the defendant's right to be convicted only of the offense where all of the elements have been proven beyond a reasonable doubt. We noted that the instructions given in *Hunter* did not sufficiently instruct the jury on this point. However, *Hunter* does not require that this particular instruction be given automatically upon request without regard to the circumstances of the particular case or the other instructions given. As this Court noted three years later in *State v. Van Vlack,* 57 Idaho 316, 65 P.2d 736 (1937), this instruction need not be given if the subject matter is covered in other instructions. This is in line with the general rule in Idaho that requested instructions, even if correct on the law, need not be given if the subject matter of the instruction is covered in other given instructions. *See State v. Griffiths, supra; State v. McKeehan,* 91 Idaho 808, 430 P.2d 886 (1967).

In this case, the jury was properly instructed on the difference between first degree murder, second degree murder, and the other lesser included offenses. The jury was also instructed that all the elements of the crime charged must be proven beyond a reasonable doubt and that if it could not find the defendant guilty of the crime charged it must proceed to determine the guilt or innocence of the defendant of any of the lesser offenses defined for the jury. Thus, the subject matter of defendant's requested instruction was sufficiently

covered by other given instructions, and there was no error.

## C.

At trial appellant sought an instruction on the duty of a parent to protect its child. This instruction was refused by the trial court. Appellant assigns this refusal as error. Appellant's rationale for requesting this instruction was that, if it could be shown that Teresa Watson was an accomplice, because of a legal duty to protect her child and her failure to do so, then her testimony would then have to be corroborated, and without such corroboration appellant could not have been convicted. However, assuming that there was such a legal duty on the part of the witness Watson, and that her failure to adequately carry it out constituted a separate crime, it does not follow that her conduct would necessarily make her an accomplice to the crime for which the defendant Aragon was charged. In order for her conduct to elevate her to an accomplice status, the evidence would have to be reasonably susceptible of concluding that the witness Watson aided, abetted, counseled, induced, or procured the commission of the murder of the child. The trial court submitted that issue to the jury by three instructions dealing with accomplices and the necessity for corroboration of their testimony, which correctly stated the law on that subject.[4] The trial court did not err in failing to give

appellant's requested instruction. Appellant alleges that, "As a matter of law, Teresa Watson's testimony was not corroborated." However, the record discloses otherwise. Idaho case law throughout the years has defined the sufficiency of corroboration necessary for a conviction. The corroborating evidence offered need only connect the defendant with the crime. *State v. Evans*, 102 Idaho 461, 631 P.2d 1220 (1981); *State v. Bassett*, 86 Idaho 277, 385 P.2d 246 (1963); *State v. Mundell*, 66 Idaho 339, 158 P.2d 799 (1945); *State v. Gilbert*, 65 Idaho 210, 142 P.2d 584 (1943). While the corroborating evidence must be independent of the accomplice's testimony, *State v. Bassett, supra*, it need not be sufficient in and of itself to convict the defendant. *State v. Gillum*, 39 Idaho 457, 228 P. 334 (1924). Corroborating testimony may be slight and need only go to one material fact. *State v. Evans, supra; State v. Mundell, supra; State v. Brown*, 53 Idaho 576, 26 P.2d 131 (1933); *State v. Orr*, 53 Idaho 452, 24 P.2d 679 (1933). In addition, the testimony may be entirely circumstantial. *State v. Mundell, supra; State v. Brown, supra; State v. Gillum, supra*. In the past, we have upheld the sufficiency of the corroboration in situations where there was independent identification of a ski mask worn by the defendant on the night of the crime, and hair taken from the mask closely matched that of the defendant, *State v. Evans, supra;* where

---

4. "INSTRUCTION NO. 18

"An accomplice is a person concerned in the commission of a crime, whether he directly participates in the commission of the act constituting the offense or aids and abets in its commission, or, not being present, has advised or encouraged its commission.

"Mere presence at, acquiescence in, or silent consent to the commission of an offense is not, in the absence of a duty to act, legally sufficient, however reprehensible it may be, to constitute one a principal, an accessory, an aider and abettor, or an accomplice.

"An accomplice is one who is joined or united with another; one of several concerned in a felony; an associate in a crime; one who co-operates, aids, or assists in committing the offense.

"A mere mental state of uncommunicated consent or acquiescence on the part of a bystander, where a crime is being instigated, is not

sufficient to make him an accomplice in its commission. Some aiding, abetting or actual encouragement on his part is essential.

"INSTRUCTION NO. 19

"Whether or not any witness in this case was an accomplice as defined in the previous instruction is for you, the jury, to determine from all the testimony and the circumstances as shown by the evidence.

"INSTRUCTION NO. 20

"It is the law in Idaho that a conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

the condition of the victim supported the inference that force was used where the defendant was charged with rape, *State v. Adair*, 99 Idaho 703, 587 P.2d 1238 (1978); where the defendants were identified as being in the truck used to commit the crime at the approximate time the crime was committed, *State v. Bassett, supra;* and that the statements and actions of the defendant after his arrest may be sufficient to corroborate an accomplice's testimony, *State v. Brown, supra.*

 In this case there was more than sufficient corroboration of Teresa Watson's testimony. There was testimony by a neighbor indicating that appellant had previously threatened to throw Monique out of a moving pickup unless she stopped crying, and had abused her in his presence on at least one occasion, when he picked her up and threw her onto a couch. Testimony of Monique's treating physicians indicated that a great deal of force would have to have been used in order to inflict the injuries Monique suffered. In addition, appellant was placed on the scene through the testimony of two ambulance drivers. These drivers testified as to the condition of both Teresa Watson and appellant. Teresa Watson was described as hysterical, and appellant was described as mute and demonstrating no reaction to the fact that Monique had been injured. Another neighbor also testified to Watson's agitated condition. This is more than sufficient corroboration of Teresa Watson's testimony.

### D.

 Appellant argues that he was denied a fair trial because the prosecution failed to disclose material evidence. Specifically, defense counsel did not learn until after trial of a report by Officer Jerry Femling in which he reported a statement made by Teresa Watson's mother, Mrs. Brown. According to the report, Mrs. Brown had talked to Officer Femling prior to Monique's death, stating that "Teresa in the past had hit the child and shakes it when it crys. She has called the child abuse center on Teresa before. Mrs.

Brown also said that Emilio Aragon does not like the baby and Teresa had to talk Emilio into letting her take the baby with her." Appellant alleges that the withholding of this report by the prosecution deprived him of a fair trial.

Appellant asserted the same argument before the trial court in a motion for new trial, and the trial court held an evidentiary hearing which disclosed that on April 10, the date of the beating of the deceased child, Officer Jerry Femling of the Ketchum Police Department received the telephone communication from Teresa Watson's mother, Dorothy Brown, and made a handwritten note of that conversation. However, that report was never typed up and forwarded to the Blaine County prosecuting attorney's office. Rather, Officer Femling related that telephone conversation to Gary Starkey, an investigator for the Blaine County prosecuting attorney's office, who the next day contacted Mrs. Brown concerning the matter. Officer Starkey testified that Mrs. Brown told him that she had never seen her daughter Teresa Watson strike the grandchild, although she had seen her shake the child when it cried too much. Mrs. Brown also advised the investigator that at an earlier time she had filed a complaint with the Health & Welfare Department in Twin Falls. Starkey's impression of that conversation was that Mrs. Brown, who had custody of the child for approximately one to two months after it was born before her daughter Teresa Watson took the baby away, was upset because she did not approve of her daughter's lifestyle, and she wanted to keep custody of the child herself. In addition, the record reflects that investigator Starkey contacted the Health & Welfare Department in Twin Falls where Mrs. Brown made her complaint. Miss Warner, the caseworker who discussed the matter with investigator Starkey, testified that they had received the complaint from Mrs. Brown and had investigated whether or not the child was being properly cared for, and concluded that there was no indication that Teresa Watson was not properly caring for

her child. The caseworker testified that she had concluded that Teresa Watson did not get along with her mother and that the mother wanted the child to raise for herself. Accordingly, the department had taken no action on Mrs. Brown's complaint.

After hearing the foregoing testimony, and after concluding that the prosecuting attorney's office and its investigator were never aware that Officer Femling had made the handwritten note referred to above, the trial court concluded that no violation of the defendant's right to discovery had occurred, and accordingly denied the motion for new trial.

Prosecutors have a constitutional duty to disclose to the defendant any exculpatory information in their control. *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980); *see also United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Exculpatory evidence is evidence which, if known, would have created a reasonable doubt of guilt that did not otherwise exist. *State v. Brown,* 98 Idaho 209, 560 P.2d 880 (1977). A prosecutor's failure to disclose such exculpatory evidence is a denial of due process. *State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972). However, to constitute a denial of due process, the exculpatory information must be shown to be material. As the United States Supreme Court noted in *United States v. Agurs, supra,*

> "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." 427 U.S. at 109–110, 96 S.Ct. at 2400.

The evidence that appellant urges us to accept as exculpatory does not meet the test of materiality established in federal and state cases.

The record reflects that Mrs. Brown's statement was hearsay, and she had no personal knowledge of her daughter Teresa hitting her child. Her statement that she would shake the child when it cries was at most cumulative and in no way exculpato-

ry. Her statement that she had called the child abuse center on Teresa before appears to reflect only her own motive to obtain custody of the child. Accordingly, the statement does not establish the materiality necessary to constitute a violation of either the prosecution's constitutional duty to disclose exculpatory information under *United States v. Agurs, supra,* or a violation of I.C.R. 16. Accordingly, appellant was not deprived of a fair trial.

## E.

 Appellant also argues that evidence presented at trial was insufficient to prove deliberation and premeditation. In analyzing appellant's contention, the appropriate standard of review is whether there is substantial competent evidence to support the jury's verdict. *State v. Warden,* 100 Idaho 21, 592 P.2d 836 (1979); *State v. Griffith,* 97 Idaho 52, 539 P.2d 604 (1975); *State v. Cypher,* 92 Idaho 159, 438 P.2d 904 (1968). Our function on appeal is to examine the supporting evidence, not to place ourselves in the jury's position or reweigh the significance of evidence as it relates to specific elements. *State v. Evans, supra; State v. Cysewski,* 101 Idaho 353, 612 P.2d 1200 (1980). On appeal, all facts, and inferences to be drawn from those facts, are construed in favor of upholding the lower court decision. *State v. Barsness,* 102 Idaho 210, 628 P.2d 1044 (1981), *appeal dismissed* 454 U.S. 958, 102 S.Ct. 495, 70 L.Ed.2d 373.

The jury was properly given the following instruction:

> "To establish the crime of First Degree Murder, direct evidence of a deliberate and premeditated purpose to kill is not required. The necessary elements of deliberation and premeditation may be inferred from the proof of such facts and circumstances as will furnish a reasonable foundation for such an inference."

We conclude that there were sufficient facts and circumstances to furnish a reasonable foundation for the inference that these elements existed. For example, there was evidence of appellant's pre-exist-

ing dislike for the victim. There was testimony indicating previous threats against the victim by appellant. There was also testimony indicating prior incidents of mistreatment of the victim. Furthermore, medical evidence established that the injuries received by the victim were unusual and difficult to achieve and must have been inflicted by extraordinary force. In addition, the fact that there was more than one such blow supports a finding of a preconceived intent to kill. Appellant's demeanor after the injuries were inflicted is also a basis for the inference that appellant had planned to inflict injuries on Monique. He was calm, refused to aid the victim or seek help in any way, and instead began planning how he could cover up his involvement in the incident. From this evidence the jury could reasonably infer a premeditated and deliberated killing. That verdict will not be disturbed on appeal.

F.

 Appellant argues that the aggravating circumstances found in I.C. § 19–2515(f)(6) and –(8) are unconstitutionally vague. This argument has been raised in several of our previous death penalty cases, and has been disposed of in those cases by the actions of this Court in placing a limiting construction on each of these circumstances. It can no longer be claimed that these circumstances are unconstitutionally vague. *See State v. Sivak,* 105 Idaho 900, 674 P.2d 396 (1983); *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983); *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981). All of the aggravating circumstances found by the trial court are supported by substantial competent evidence and thus will not be disturbed.

 The trial court found the existence of the circumstance in I.C. § 19–2515(f)(5), that the murder was especially heinous, atrocious and cruel. The existence of this circumstance is supported by evidence that the victim was severely injured through the use of tremendous force, even though the victim was an eight month old child who could not possibly pose a threat to appellant, or provoke him intentionally. The defendant himself admitted hitting the child with his fist. The court also found the existence of I.C. § 19–2515(f)(6), the defendant exhibited utter disregard for human life. Again, this finding is supported by evidence that appellant acted calmly, yet violently, and refused to render aid to the victim, even though given several opportunities, and even though it was obvious the victim was in mortal peril. His only concern was to cover up his own participation in the incident. Finally, the court found the existence of I.C. § 19–2515(f)(8), that appellant has exhibited a propensity to commit murder that poses a continuing threat to society. This finding is supported by appellant's past criminal record, which includes charges of child abuse and assault with a deadly weapon, as well as the utter lack of remorse shown by appellant over the death of the child.

II

In cases where the death penalty is imposed, we have a duty to conduct an independent review of the case to ensure that the penalty was imposed without resort to passion or prejudice and that the imposition of such penalty is not excessive or disproportionate. I.C. § 19–2827.

There is nothing in this record to indicate a resort to passion or prejudice. Instead, we find virtually an error-free trial conducted by a trial judge intent on giving the defendant every opportunity possible to obtain a fair trial. The jury was adequately instructed on the law applicable to this case, and the evidence presented at trial supports the first degree murder verdict returned by the jury.

The trial court compiled an extensive list of findings and found no mitigating circumstances which outweighed the gravity of the aggravating circumstances. The court found three statutory aggravating circumstances existed beyond a reasonable doubt. The trial court considered all of the possible mitigating circumstances urged by appellant, and also considered the possibility of the existence of additional mitigating

circumstances, but after consideration decided that none of the factors either suggested by appellant or considered by the court on its own constituted a mitigating circumstance. We find no error in the procedure followed by the trial court in making its findings.

■ In conducting our proportionality review under I.C. § 19–2827, we conduct a review of the sentence imposed, and the sentences imposed in similar cases, to assure that the sentence in this case was not excessive or disproportionate. In comparing this case with other death cases, we generally consider the nature of and the motive for the crime committed, such as our consideration in *State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983), and *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1983) (killing of an eye witness to another homicide), as an indication that the sentence imposed was proportionate to other murder cases. In *State v. Sivak*, *supra*, we considered the "heinous nature of the crime ... and the nature and character of the defendant" in deciding that the sentence in that case was proportionate and just. In *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), we conducted a thorough review of cases implicating the death penalty to determine the proportionality of the sentence.

■ We find nothing in the record of the case at bar, after a consideration of the nature of the crime, the character of the defendant, and penalties imposed in similar cases which would indicate that the sentence here imposed was disproportionate or unjust. The crime committed was an intentional act perpetrated on a helpless victim who could not have provoked the attack. The attack was brutal, and one that only could have been intended to kill the victim

because of the severity of the blows dealt. The character of the defendant, appellant here, is not that of an exemplary citizen, but rather of a convicted felon with apparently little respect for the law or fellow human beings. At least two of appellant's many previous convictions involved disrespect for the welfare of others, including one conviction for assault with a deadly weapon, an incident where appellant knifed a man in a bar.

An examination of recent similar cases indicates that this case is easily aligned with others in which the death penalty was imposed. In all of the more recent cases, the cruel nature of the crime and the character of the defendants were similar to the case at bar. In both *Gibson* and *Paradis* the murder committed was brutal and the character of the defendants was less than exemplary as reflected by their prior criminal records. In *Sivak*, the defendant and a cohort brutally murdered a female gas station attendant. Again, the record of the defendant was far from spotless. In *Creech*, the nature of the crime and the character of the defendant were especially supportive of the imposition of the death penalty. In all of these recent cases, the aggravating circumstances surrounding the commission of the crimes far outweighed any mitigating circumstances found, if indeed any could be found. We find that the sentence imposed in this case is proportionate to those imposed in similar death cases.

■ In conducting our proportionality review we have also examined numerous cases involving the killing of a human being, although not necessarily involving a charge of first degree murder, or a sentence of death.[5] In this case the jury

5. Those cases we have considered include:

*State v. Bainbridge,* — Idaho —, 698 P.2d 335 (1984); *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983); *State v. Gibson,* 106 Idaho 54, 675 P.2d 33 (1983); *State v. Sivak,* 105 Idaho 900, 674 P.2d 396 (1983); *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983); *State v. Major,* 105 Idaho 4, 655 P.2d 703 (1983); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336 (1983), *cert. den.* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *State v. Carter,* 103 Idaho 917, 655 P.2d 434 (1982); *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1983); *State v. Stormoen,* 103 Idaho 83, 645 P.2d 317 (1982); *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981); *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980); *State v. Padilla,* 101 Idaho 713, 620 P.2d 286 (1980); *State v. Fuchs,* 100 Idaho 341, 597 P.2d 227

found that the defendant possessed an intent to kill his victim which justified a charge of first degree murder. We acknowledge the trial court's superior ability to observe witnesses and their demeanor during the sentencing phase of a trial, and especially the unique ability of the trial judge to observe the character and demeanor of the defendant, a tool essential to the ultimate goal of tailoring a sentence to a particular defendant. With that unique ability of the trial court in mind, we have determined that the sentence of death imposed in the present case is not out of proportion to the sentences heretofore imposed. The judgment of conviction and sentence imposed are affirmed.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice, concurring specially.

I concur in the majority opinion with the caveat and reservation that I remain of the opinion that the Idaho capital sentencing process is unconstitutional in two respects:

(1) It does not provide for utilization of the jury, which is in violation of both the Idaho and United States constitutions; and

(2) The sentencing proceeding, as conducted by the trial courts with the approval of this court, by permitting

the admission of the presentence investigation report and other hearsay evidence over objection of the accused deprives the accused of the right to cross-examine and confront witnesses.

My reasoning in this regard is set forth in detail in my dissenting opinions in *State of Idaho v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), and *State of Idaho v. Sivak*, 105 Idaho 900, 674 P.2d 396 (1983).

BISTLINE, Justice, concurring in part and dissenting.

While I am able to agree, and do, with the majority opinion wherein it finds no error in failing to treat Watson as an accomplice on the basis of the duty of a parent to protect its child, and further agree that error cannot be predicated on the failure of the prosecutor to transmit the report of Officer Femling, I am unable to concur in the majority's disposition of errors assigned in the giving and refusing of instructions.

**I. Given Instruction 28 and Defendant's Requested Instruction Nos. 12 and 13**

There is little doubt from a reading of the majority opinion and the State's brief that the latter is extensively relied upon by the former. There is nothing improper about that. As I suggested in *State v. Iwakiri*, 106 Idaho 618, 682 P.2d 571 (1984)

(1979); *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979); *State v. Bradley*, 98 Idaho 918, 575 P.2d 1306 (1978); *State v. Birrueta*, 98 Idaho 631, 570 P.2d 868 (1977); *State v. Allen*, 98 Idaho 782, 572 P.2d 885 (1977); *State v. Ward*, 98 Idaho 571, 569 P.2d 916 (1977); *State v. Gerdau*, 96 Idaho 516, 531 P.2d 1161 (1975); *State v. Powers*, 96 Idaho 833, 537 P.2d 1369 (1975) *cert. den.* 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99; *State v. Hokenson*, 96 Idaho 283, 527 P.2d 487 (1974); *State v. Hatton*, 95 Idaho 856, 522 P.2d 64 (1974); *State v. Standlee*, 96 Idaho 165, 525 P.2d 360 (1974); *State v. Foley*, 95 Idaho 222, 506 P.2d 119 (1973); *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Atwood*, 95 Idaho 124, 504 P.2d 397 (1972); *State v. Sanchez*, 94 Idaho 125, 483 P.2d 173 (1971); *State v. Gomez*, 94 Idaho 323, 487 P.2d 686 (1971); *State v. Dillon*, 93 Idaho 698, 471 P.2d 553 (1970), *cert. den.* 401 U.S. 942, 91 S.Ct. 947, 28 L.Ed.2d 223 (1971); *State v. Radabaugh*, 93 Idaho 727, 471 P.2d 582 (1970); *State*

*v. Rodriguez*, 93 Idaho 286, 460 P.2d 711 (1969); *State v. Jiminez*, 93 Idaho 140, 456 P.2d 784 (1969); *King v. State*, 93 Idaho 87, 456 P.2d 254 (1969); *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968); *State v. Chaffin*, 92 Idaho 629, 448 P.2d 243 (1968); *Carey v. State*, 91 Idaho 706, 429 P.2d 836 (1967); *State v. Koho*, 91 Idaho 450, 423 P.2d 1004 (1967); *State v. Anstine*, 91 Idaho 169, 418 P.2d 210 (1966); *State v. Gish*, 87 Idaho 341, 393 P.2d 342 (1964); *State v. Clokey*, 83 Idaho 322, 364 P.2d 159 (1961); *State v. Burris*, 80 Idaho 395, 331 P.2d 265 (1958); *State v. Snowden*, 79 Idaho 266, 313 P.2d 706 (1957); *State v. Buchanan*, 73 Idaho 365, 252 P.2d 524 (1953); *State v. Owen*, 73 Idaho 394, 253 P.2d 203 (1953) (considered only in terms of crime committed and penalty imposed; overruled on substantive law point in *State v. Shepherd*, 94 Idaho 227, 486 P.2d 82 (1971)); *State v. Pettit*, 104 Idaho 601, 661 P.2d 767 (Ct.App.1983); *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App.1982).

(Bistline, J., concurring and dissenting), an appellate court certainly should be entitled to rely upon the briefs of counsel.

In this case, the State's brief tells us that if there was any error in the trial court's giving Instruction No. 28, it is not our legitimate concern because "by requesting identical language in his requested instructions, the appellant cannot now on appeal allege that error was committed by the submission [to the jury] of the trial court's instructions which differentiated between first and second degree murder. Such conclusion finds its basis in the well-recognized rule of law that a party cannot invite error and then complain of it on appeal." State's Brief, p. 10. While the majority opinion correctly states that "given instruction 28 is substantially identical to defendant's requested instruction 12," Given No. 12 was not requested in a vacuum, but requested along with defendant's Requested No. 13. Unlike No. 12, which the trial court endorsed as "covered," Requested No. 13 was "refused." That important instruction, and its endorsed "refusal," and supporting authority, found at p. 247 of the Clerk's Record, are as follows:

> 13. If you find beyond a reasonable doubt that the Defendant struck the deceased and intended to kill her, but the intent was formed at the instant of the striking which led to death, he did so without premeditation and deliberation and cannot be convicted of murder of the first degree.

*State v. Dong Sing,* 35 Idaho 616 [208 P. 860]; *State v. Shuff,* 9 Idaho 115 [72 P. 664]; *State v. Van Vlack,* 57 Idaho 316 [65 P.2d 736]; *State v. Dillon,* 93 Idaho 698 [471 P.2d 553]; *Kitchen v. United States* [D.C.Cir.,] 205 F.2d 720; *People v. Isby* [30 Cal.2d 879], 186 P.2d 405; *State v. Kelley* [*Kelly*], [131 Kan. 357], 291 P. 94 [945]; *State v. Conway* [351 Mo. 126], 171 S.W.2d 677; *Bass v. State* [191 Tenn. 259], 231 S.W.2d 707; *Forehand v. State,* 126 Fla. 464, 171 So. 241; *Barker v. State* [238 Ind. 271], 150 N.E.2d 680; *Brown v. State* [220

Md. 29], 150 A.2d 895; *People v. Caruso* [246 N.Y. 437], 159 N.E. 390; *State v. Brown* [218 N.C. 415], 11 S.E.2d 321; *State v. Floyd* [226 N.C. 571], 39 S.E.2d 598; *State v. Nelson* [148 Minn. 285], 181 N.W. 850; *State v. Bonofiglio,* 67 N.J.L. 239, St.R. 432 (N.J.), 52 A. 712, 54 A. 99; *State v. Greenleaf,* 71 N.H. 606, 54 A. 38; *State v. Henson,* 221 Kan. 635, 562 P.2d 51; *State v. Wilson,* 234 Iowa 60, 11 N.W.2d 737; *Winton v. State,* 151 Tenn. 177, 268 S.W. 633; *Lowe v. State,* 23 [90] Fla. 255, 105 So. 829; *State v. Faust,* 254 N.C. 101, 118 S.E.2d 769; C.J.S. *Homicide,* § 33(a) at 886 and (d) at 889.

The State's brief candidly opens its discussion of the assigned failure to give defendant's Requested No. 13 with the concession that it "does not take issue" with the "contention that a killing can be intentional without being first degree murder." State's Brief, p. 19. The argument is then made that Given Nos. 28 and 27, made the jury "properly aware that the defendant's intent to kill was not necessarily indicative of first degree murder." Given Nos. 28 and 27 are set out in the majority opinion. Obviously, those instructions do not come up to the quality of forthrightness and conciseness of defendant's Requested No. 13. Given No. 27, as the majority points out, merely defined second degree murder, and stated three necessary elements, one of which is "(c) That the killing was done with malice aforethought." This is a requirement of any murder, and adds nothing to Given No. 28, simply because it is repeated in the first sentence of Given No. 28. Given No. 28 adds that to amount to first degree murder additionally "there must be willfulness, deliberation and premeditation." Neither instruction gave the jurors any indication as to how they would apply those legal concepts to the facts before them. And, as defendant's counsel points out in his brief:

> "The result of that refusal was that the jury was not instructed that they could find beyond a reasonable doubt that Mr. Aragon intended to kill the victim, without that killing being murder of the first degree. In fact, since Jury In-

struction No. 28 told them that the killing was in the first degree if they found a premeditated intent to take life and that that premeditation could take place even if the intention to kill and the killing occurred as successive thoughts of the mind, they may well have concluded they were obligated to find first degree murder if they found an intent to kill. While the instructions may be correct statements of the law, it is important that the jury be properly instructed on intent to kill to avoid the possibility of their being applied incorrectly." Appellant's Brief, p. 25.

As an earlier court stated it, "The question is whether, when so read and construed, it can reasonably be held that the jury may have been misled by it." *State v. Dong Sing*, 35 Idaho 616, 627, 208 P. 860, 862 (1922). Lawyers, judges, and legal scholars struggle mightily with the terminology attendant to jurisprudence. Jurors can scarce be expected to readily grasp that which legal minds find difficult. There is no reason for not taking the applicable facts and circumstances and giving a requested instruction which molds the law to those facts in a readily understandable fashion. There is every reason for so doing it. Moreover, try as might, I am unable to ascertain where in the majority opinion a disposition, or even mention, is made of the assigned error in refusing defendant's Requested No. 13—for which reason it may be that any individual effort in that line is thought unwarranted.

Moreover, a further concern here is that the majority at one point, in defense of Given No. 28, states that "Because these instructions follow the language of the statute, it was not error to give them." Given No. 23 is in the words of the statute, but I am unable to see where defendant has complained of it. Nor do I see where defendant has complained of Given Nos. 25 or 27. It is Given No. 28 which is under fire, and it is NOT in the words of the statute, but rather an attempt *to explain* statutory language to laymen, and supply those laymen with statutory interpretations by earlier supreme courts years ago. It is

thus seen that the majority errs in misclassifying Given No. 28 with those instructions which are based on statutory language, and of which no complaint is made.

What it comes down to, then, is that the majority, in upholding Given No. 28 necessarily is restricted to doing so on the basis of invited error. But, even prior to present statutes mandating our review of death penalty sentences, which requires such plenary review irrespective of whether the defendant appeals or even wants to appeal, this Court has on many other occasions considered fundamental error which had not been properly preserved in the trial court.

Four years ago, in *State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1980), I pointed out that it was before my time with the Court that it had declared the doctrine of fundamental fairness:

"In *State v. Cariaga*, 95 Idaho 900, 523 P.2d 32 (1974), the opinion notes that 'During oral argument before this Court the question was raised as to whether or not appellant was convicted of the crime with which she was charged.' 95 Idaho at 902, 523 P.2d at 34. To a contention that the defendant had waived his right to that challenge by failing to object, this Court said:

"'Rather, we feel the issue of whether or not appellant has waived any objections she might have is controlled by our decision in *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971), where we held that *where a fundamental error has been committed in a criminal trial, this Court may consider it even though no objection was made in the trial court.*

"'"The appellant contends that he was denied due process and deprived of a fair trial because the prosecuting attorney elicited at trial that Haggard did not tell the judge of his alibi at the preliminary hearing. Appellant maintains that this information should not have been made available for the jury's consideration and by so doing the low-

er court deprived him of a fair trial. Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not consider this assignment of error. However the obligation of the state to see that defendant receive a fair trial is primary and fundamental. [Citing cases.] In the case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at the time of trial." 94 Idaho at 251, 486 P.2d at 262.

Because the variance between the complaint and conviction *denies the appellant due process of law*, she has not waived her right to object even though no objection has been previously made. Neither can this Court ignore the issue because it has not been assigned as error in the original briefs.' 95 Idaho at 903–04, 523 P.2d at 35–36 (emphasis added)." 101 Idaho at 643, 619 P.2d at 798 (emphasis original).

In *Owens*, the majority of the Court refused to apply its own doctrine. Having a few years earlier in *State v. Haggard, supra*, in the above quotation, proclaimed that the obligation of providing a fair trial is primary and fundamental, and that this Court may consider error which technically has not been properly preserved, the majority in *Owens* nevertheless elected to say in that case:

"Owens, however, did not object to the instruction at trial and, pursuant to Idaho law, must be deemed to have waived any objection to the instruction. I.C.R. 30; *State v. Collinsworth*, 96 Idaho 910, 539 P.2d 263 (1975). 'The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. *See, e.g.,* Fed.Rule Crim.Proc. 30.' *Hankerson v. North Carolina*, 432 U.S. 233, 244, n. 8, 97 S.Ct. 2339, 2345, n. 8, 53 L.Ed.2d 306 (1977)." 101 Idaho at 640, 619 P.2d at 795.

In doing so, the majority completely refused to comment on my suggestion that the

prior decisions of the Court had considered fundamental error. It becomes evident that the Court will consider fundamental error only when it chooses to do so—much as in sentence review it may conduct a meaningful review, or it may simply recite that a sentence is within statutory limits period. *State v. Nield*, 106 Idaho 665, 682 P.2d 618 (1984) (Bistline, J., dissenting). Ordinarily such inconsistent approaches would be viewed as unfortunate, but here it is an intolerable state of affairs. My recollection is that in *Owens* the defendant's appeal was for the purpose of clearing the record of a felony conviction, and that the defendant was not sentenced to any confinement. In the case before us today the defendant's appeal is for the purpose of obtaining a fair trial before he is executed for the crime of first degree murder, a somewhat different proposition than that before the Court in *Owens*. There is no justification for the majority's choice to not apply the Court's fundamental error doctrine in this case. I point to language in the State's brief which demonstrates the State's view that the Court would likely apply the doctrine in a criminal case of which there can be none more serious and more final:

"If there was error, appellant invited it, and as a result thereof he cannot now challenge the trial court's action on appeal.

"Should the court find, however, that the issue of the propriety of the trial court's definition of deliberation and premeditation is appropriate for appellate review, the State submits that such a definition represented a correct and sufficient statement of the law and did not constitute reversible error." Respondent's Brief, p. 17.

Although the State's anticipation as to the Court's review has turned out to be unfounded, it is also to be noted that the State has engaged in arguing that, although deliberation and premeditation in Given No. 28 lumped together in the conjunction and then defined as meaning done with reflection and conceived beforehand,

" '[a] careful analysis of such language reveals that the trial court was not indicating that such terms are synonymous ...' " (Respondent's Brief, p. 17). There should be little doubt that the court was not indicating, and did not so intend, that the words "deliberation" and '"premeditation" are synonymous. The question, however, is otherwise: What was the understanding of the jurors? If any one of them misunderstood, then the system has failed, especially where the balance of the instruction told the jury that a sudden heat of passion would preclude the idea of "deliberation," but made no mention of "premeditation." The State says of the problem that "Thus appellant's contention is one of form rather than substance, and simply does not affect the propriety of the instruction." Respondent's Brief, p. 18. Presently, I am not so persuaded. As I have said earlier, the finest of legal minds in wrestling with considerations of deliberation and premeditation do not find it easy to explain to each other the conceptual relationship. For certain, juries should be given the best of explanations, and in understandable language. Here, defendant's Requested No. 13, had it been given to the jury with Given No. 28, would have adequately explained to them how the element of premeditation applied to the facts and circumstances of this case in determining whether the defendant was guilty of first degree murder or guilty of murder in the second degree, assuming that it was first found that he was guilty of murder.

The State has urged upon us that an instruction given in *State v. Van Vlack*, 57 Idaho 316, 348, 65 P.2d 736, 750 (1937), defines the "deliberation" and "premeditation" in language similar to Given No. 28, and that it is "in substance the same as." Respondent's Brief, p. 18. The instruction, Given No. 12, which the *Van Vlack* Court said "sufficiently covered the question of premeditation," reads as follows:

" 'A killing is willful when it is intentional and not accidental; it is deliberate whenever the intent or purpose to take life is formed upon deliberation or consideration; it is premeditated whenever deliberation or consideration, however short, precedes the execution of the purpose formed; it is felonious when it is unlawful.' " 57 Idaho at 348, 65 P.2d at 750.

I am unable to agree that the two instructions are substantially the same, and see little similarity.

## II. Defendant's Requested No. 26

The majority opinion says that such instruction (which is set forth therein and for ready reference is footnoted below),[1] if requested, according to *State v. Hunter*, 55 Idaho 161, 39 P.2d 301 (1934), "should be given to inform the jury of the defendant's right to be convicted only of the offense where all of the elements have been proven beyond a reasonable doubt." Frankly, I do not comprehend what the author of the majority opinion had in mind in making that statement. Given no. 25, set out in the majority opinion, sets out the elements which must be proved beyond a reasonable doubt in order to prove murder in the first degree. Given no. 27, also set out in the majority opinion, lays out the elements which must be proved beyond a reasonable doubt in order to prove murder in the second degree.

The trial court also provided the jury with both the placing of the burden of proof and the definition of reasonable doubt:

"Jury Instruction No. 7. A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State

1. Defendant's Requested Instruction No. 26: "When you are convinced beyond a reasonable doubt that the crime of murder has been committed by the Defendant, but have a reasonable doubt whether such murder was of the first or of the second degree, you must give to such Defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree." R., p. 252.

the burden of proving him guilty beyond a reasonable doubt.

"Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." Tr., Vol. I, p. 81.

It is readily seen that the jury was fully and correctly instructed as to the law of reasonable doubt. There is no contention otherwise. With that well in mind, one then reads from the majority opinion "that the instructions given in *Hunter* did not sufficiently instruct the jury on this point." By "on this point" can only be meant on proving all of the elements beyond a reasonable doubt. Now, this is indeed startling, and defense counsel may well wonder if the majority has overlooked reading pages 27 and 28 of his brief. What the *Hunter* opinion actually did say is there set forth, verbatim, and is as follows:

"We have very carefully examined the instructions of the trial court and find that while the court fully and correctly instructed the jury generally as to the law of reasonable doubt, it did not instruct the jury that if they found it established by the evidence, beyond a reasonable doubt that the defendant had committed a public offense, but were in doubt as to which of two or more degrees he was guilty, he could be convicted only of the lowest degree included in the charge stated in the information. The appellant was clearly and unquestionably entitled to have the requested instruction given to the jury." 55 Idaho at 166, 39 P.2d at 303.

The *Hunter* Court not only held that the defendant "was clearly and unquestionably entitled to have the requested instruction given to the jury," but clearly and unmistakeably observed that the requested instruction was "stated in the exact language

of the statute, Sec. 19–2005, I.C.A. (now I.C. § 19–2105)." 55 Idaho at 165, 39 P.2d at 303.

The same instruction was given in nearly identical language three years later in *State v. Van Vlack, supra:*

" 'You are instructed that the law provides that in the event an accused shall be deemed proven beyond a reasonable doubt to be guilty of some degree of a crime, but a reasonable doubt shall exist as to what degree of crime such one is guilty of, that there shall be a conviction only of the lesser degree of crime.

" 'In determining what your verdict shall be you will, if you find the defendant guilty and shall have such reasonable doubt as to what degree of crime he is guilty of, give him the benefit of this doubt.' " 57 Idaho at 353–54, 65 P.2d at 753.

In a fairly recent opinion relied on extensively by both the defendant and the State, *State v. Koho*, 91 Idaho 450, 423 P.2d 1004 (1967), this Court first noting that "The jury was required to find the degree of the murder from the evidence, not on the basis of a presumption," and observing also that the instruction did follow the language of I.C. § 19–2105, approved this instruction:

" 'You are instructed that by the averments of this information the defendant is charged with the crime of murder, which includes not only murder of the first degree but also murder of the second degree and manslaughter, both voluntary and involuntary.

" 'When a crime is by statute differentiated into degree, it is the duty of the jury to determine by their verdict what degree thereof, if any, has been committed.

" 'Should the jury find from the evidence that the defendant has committed a public offense charged in the information but entertain a reasonable doubt as to which of the several degrees he is guilty, then he can be convicted only of the highest degree as to his guilt of which you have, from the evidence, no

reasonable doubt.'" 91 Idaho at 454–55, 423 P.2d at 1008–09.

The Court said of the instruction:

"It was a correct statement of the intent of the statute as applied to a case involving more than two degrees of crime, such as this where murder of the first and second degrees and voluntary manslaughter were involved. However, even in such a case the language of the statute would have been sufficient." 91 Idaho at 455, 423 P.2d at 1009.

A year later the Court cited *Koho* and again approved an instruction which was more in the language of I.C. § 19–2105:

"Should the jury find from the evidence that a defendant has committed a public offense charged in the Information, but entertain a reasonable doubt as to which of the two degrees he is guilty, then he can be convicted only of the highest degree of which you have, from the evidence, no reasonable doubt as to his guilt." *State v. Darrah*, 92 Idaho 25, 28, n. 4, 435 P.2d 914, 917 n. 4 (1968).

The Court stated additionally: "However, in a case such as this, where only two degrees of the crime charged are involved, giving this instruction in the language of the statute would be preferable." 92 Idaho at 28, 435 P.2d at 917. Citing *Hunter*, the Court in *Carey v. State*, 91 Idaho 706, 429 P.2d 836 (1967), again noted that "If the jury 'has reasonable ground of doubt in which of two or more degrees he [the defendant] is guilty, he can be convicted of the lowest of such degrees only,' I.C. § 19–2105, and the judge upon request must so instruct the jury."

As an earlier Supreme Court noted in *Hunter*, so today the Court is obliged to say that "The appellant was clearly and unquestionably entitled to have the requested instruction given to the jury." It takes very little reading of the Idaho cases, and the one statute, to comprehend that the Court in the past has clearly seen the distinction between a trial court's general instructions defining reasonable doubt and its applicability to the burden of proof—on the one hand—and on the other hand an instruction following I.C. § 19–2105 which tells the jury that where there is any reasonable doubt as to which degree of murder was committed, the accused is to receive the benefit of that doubt.

In this particular case, there was no eyewitness to the crime. As evidence of premeditation the prosecution had to rely upon those circumstances which are laid out in the majority opinion. Based on the record before us, it is clear that the jury could have found defendant guilty of murder. It is difficult, however, to readily see how the jury could have found the element of premeditation. Language of an earlier Court is appropriate:

"If nothing more appeared than that at the instant the blow was struck or the killing took place there was an intention to kill, there being no time for deliberation or premeditation, the killing would not be murder of the first degree, ...." *State v. Dong Sing*, 35 Idaho at 626, 208 P. at 862.

Under the circumstances here presented, it was extremely important that the jury would be fully and correctly instructed—which certainly encompasses the notion that the instructions comport with statutory law and prior decisions. The majority not only is unfair to the defendant in attempting to equate general instructions on burden of proof and reasonable doubt with the reasonable doubt instruction specifically required by the statute, but does a disservice to the Idaho system of criminal jurisprudence.

Finally, on this point, I must treat also with the majority's remarkable statement that the *Hunter* instruction need not be given if its subject matter is covered in other instructions. This is said to be based on *Van Vlack*, which followed *Hunter* by three years, but strangely, no specific *Van Vlack* language is set forth or even paraphrased in the majority opinion. Accordingly, perhaps the opinion is again following the State's brief, and to that source resort must be had.

The State's brief, as one might suspect, does address the defendant's Requested

No. 26 issue by opening with the suggestion that "refusal to give a requested instruction, *even though a correct statement of the law*, does not constitute error where the subject matter of the instruction has been adequately covered by other instructions . . . ." Respondent's Brief, p. 26 (emphasis added).

The State nonetheless, in obvious recognition that defendant's Requested No. 26 is an instruction relating to a specific statute, then declares that:

"The State recognizes that Idaho case law appears to support the conclusion that a defendant is entitled to an instruction to the effect that if the jury is convinced beyond a reasonable doubt that the defendant has committed a public offense but there is reasonable doubt as to which of two or more degrees he [the defendant] is guilty he can be convicted of the lowest of such degrees only. *See,* Idaho Code § 19–2105; *State v. Hunter,* 55 Idaho 161 39 P.2d 301 (1934). In the case at bar, the appellant did request such an instruction, which the trial court refused on the ground that the subject matter thereof was covered by other instructions to be submitted to the jury." Respondent's Brief, p. 26.

Nevertheless, having so conceded, and having specifically mentioned the statute I.C. § 19–2105—which the majority avoids doing—the State insists "that upon consideration of the instructions as a whole," the refusal of the instruction was not error. Respondent's Brief, p. 26. The majority, of course, as I have pointed out, repeated that thought—but it is not so for reasons pointed out.

The State's brief does cite *Van Vlack,* saying of it that this Court there "construed almost identical instructions to cover the very same instruction as requested by the appellant in the case at bar. 57 Idaho at 354 [65 P.2d at 753]." Respondent's Brief, p. 27. Naturally, one turns to *Van Vlack* at p. 354, 65 P.2d at 753, and this is what one finds only:

doubt shall exist as to what degree of crime such one is guilty of, that there shall be a conviction only of the lesser degree of crime.

"In determining what your verdict shall be you will, if you find the defendant guilty and shall have such reasonable doubt as to what degree of crime he is guilty of, give him the benefit of this doubt."

Assignment of error No. 19, urges that requested instruction No. 11, as follows: should have been given:

"The jury are instructed that they cannot convict defendant alone upon his own confession, unless the same is corroborated by other evidence tending to connect defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of an offense." citing Brickwood-Sackett Instructions, vol. 2, sec. 2523, which in turn relies upon *Cox v. State,* (Tex.Cr.App.) 69 S.W. 145, a Texas case, which upon a careful analysis, while it approved the instruction requested, that is, held it was sufficient, not that it would have been error to refuse to give it because the court there said: *"Appellant's identity as the criminal may rest alone upon his uncorroborated confession"* (italics ours), and herein the proof of the fact that the deceased was dead and had been killed was proved absolutely and beyond peradventure of a doubt, *aliunde* the confessions or admissions or statements of the defendant, and this court as early as Fifth Idaho considering the sufficiency of confessions in a first degree murder case stated:

". . . . Then there is other evidence than his confession which in our opinion, would justify the verdict of the jury, and which points with certainty to the guilt of the defendant." (*State v. Smith,* 5 Ida. 291, 48 Pac. 1060.)

Furthermore, *Cox v. State, supra,* has been somewhat modified in a later decision of the same court, *Ingram v. State,* 78 Tex.Cr.Rep. 559, 182 S.W. 290 at 303, holding that confessions may be used to aid even the proof of the *corpus delicti* not alone the connection of the defendant

with the crime. The requested instruction was furthermore clearly erroneous in this: that it went beyond the law as heretofore laid down by this court as to what evidence, in addition to the confessions of the defendant, is necessary to sustain a conviction and did not state that *slight corroborating facts* are sufficient, which has clearly been the rule in this State since 1902 as appears from the following quotation, cited with approval on this same proposition in *State v. Wilson*, 51 Ida. 659, at 669, 9 Pac. (2d) 497.

".... It is also a well-recognized rule that the fact that a crime has been committed cannot be proved by the extrajudicial confessions or statements of the prisoner, and that there must be some evidence or corroborating circumstances tending to show that a crime has been committed, aside from such confessions or statements. (*People v. Jones*, 31 Cal. 565, 566; Wharton's Criminal Evidence, 9th ed., secs. 632, 633.) In *People v. Badgley*, 16 Wend. (N.Y.) 53, it is said: 'Full proof of the body of the crime—the *corpus delicti*—independently of the confessions, is not required by any of the cases; *and in many of them slight corroborating facts were held sufficient.*'" (Italics ours.) (*State v. Keller*, 8 Ida. 699, 70 Pac. 1051. And see *State v. Downing*, 23 Ida. 540 at 544, 130 Pac. 461.)

This distinction is pointed out in *Sullivan v. State*, 40 Tex.Cr.Rep. 633, 639, 51 S.W. 375, as follows:

"It is well settled that the confession of the accused alone will not justify a conviction. This question has been frequently decided by various decisions of this state; but, so far as we are aware, it is settled that the death of the deceased being shown to have been brought about by the criminal agency or procurement of some one, the confession is sufficient to connect the party making the confession with the crime."

■ Appellant has cited no authorities that have held it prejudicial error to refuse an instruction such as was requested, under evidence such as appears in this case. The authorities relied upon by defendant state that confessions of the defendant are sufficient to connect him with the crime, which point the requested instruction did not cover, and this court has held that it is not error to refuse a requested instruction which though partly right is likewise partly erroneous. (*State v. Boykin*, 40 Ida. 536, 234 Pac. 157; *State v. Farnsworth*, 51 Ida. 768, 10 Pac. (2d) 295.)

The foregoing, of course, is a discussion of the refusal to give a defendant's requested instruction which told the jury that the defendant in that case could not be convicted upon his own confession alone. That passage from *Van Vlack* had nothing to do with the refusal of a trial court to give the *Hunter* instruction.[1]

Regrettably the State's brief has led the majority into grievous error which plays a large part in promoting the miscarriage of justice which occurs here where the Court endorses the defendant's denial of a fair trial.

### III. The Sentence

Little need be said in this regard, because there should be a second trial free of error. I continue to be of the firm belief, well-documented in prior death penalty cases, that jury sentencing is mandated by the Idaho Constitution I add only that the court sentencing procedures in this case show far, far less of extraneous hearsay—not subject to the right of confrontation—than we have seen in the death penalty cases which have gone before, and add that the district court's sentencing decision is a model of clarity which should be made available to other district judges, so long as one more vote cannot be gained to return to constitutional jury sentencing.

Were there no trial error, I would nevertheless find lacking here a requisite propor-

---

1. As I have pointed out earlier, *Van Vlack* followed *Hunter* by a scant year, and the very same Court in both cases approved the instruc-

tion. *Hunter*, 55 Idaho at p. 166, 39 P.2d at 303; *Van Vlack*, 57 Idaho at p. 353, 65 P.2d at 753.

tionality which the Idaho legislature has demanded, having done so in reliance on the death penalty decisions of the Supreme Court of the United States.

In *State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983), I *accurately* predicted that proportionality would go by the boards in the High Court—which prognostication was 100 percent correct, and suggested that it might as well be discarded by the Idaho legislature. It is not readily attainable, and review as to proportionality by this Court cannot be and has not been meaningful. The legislature, should it address that issue, at the same time might, in a statesmanlike manner, actually examine the desirability of returning death penalty sentencing to the Idaho juries. It would be interesting to know the names of any legislators who on that issue have read and studied the opinions of Justice Huntley and myself.

I do submit that if any semblance of proportionality is to be achieved, that it will be a natural by-product of returning that function to the juries.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting from denial of petition for rehearing.

Counsel for the defendant and the trial bar at large cannot help but be devastated by the Court's summary rejection of the petition for rehearing. On far less important matters, involving not life versus death but dollars, the Court has even in recent times granted a rehearing in order to gain the benefit of a second oral argument which homes in on narrowed-down issues. The message sent out today is that the Court will not do so in death penalty cases, notwithstanding that it would take little effort and one hour for the five of us to gain the benefit to be derived from hearing counsel for the State and counsel for the defendant discuss the serious questions *on* instructions which were delved into in depth by one member of the Court (Bistline, J., dissenting). Counsel for defendant in his supporting brief explains very well

that which practicing attorneys of experience in the criminal field necessarily have to know:

In preparing for this case I was certain the jury would come back with a murder verdict on what I knew the State's evidence to be. There seemed to be only two probable interpretations of that evidence: either Emilio's actions amounted to express malice, an intent to kill the child, or they amounted to implied malice, a wanton and willful disregard of unreasonable human risk (the so-called abandoned and malignant heart.) Either way, it would amount to murder. *Therefore, it became my most important concern that the jury be made to understand the difference between first and second degree murder under Idaho law.*

That law states that "the unlawful killing of a human being with malice aforethought" is murder. Malice is defined as either express, "a deliberate intention unlawfully to take away the life of a fellow creature", or implied, "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." In order for it to be first degree murder it must have been willful, accompanied by a clear intent to take life, and deliberate and premeditated, done with reflection and conceived beforehand and not upon a sudden heat of passion. Further, the intent to kill need not have been conceived or intended for any particular length of time, the deliberate purpose to kill and the killing may follow each other as rapidly as successive thoughts of the mind.

Those are the definitions of murder and first degree murder in the State of Idaho and, obviously, any jury instructions were going to be based upon those definitions. Therefore, I felt it to be my duty to submit requested instructions which would most clearly differentiate between first and second degree murder within the confines of their definitions under the laws of the State of Idaho,

however confusing and incomprehensible those definitions be.

I find it very disheartening that both the State and this Court consider my use of those definitions to amount to "invited error." What is most reasonable, to submit some sort of "model" instructions which you know are going to be rejected or attempt to make Idaho's definitions as clear as possible? My first concern was the jury's verdict, not the appeal. ´ Defendant's Memorandum in Support of Petition for Rehearing.

Because the balance of the defendant's brief presents compelling reasons why re-argument and reconsideration are in order; it is appended hereto.

Touching briefly on error in the trial court's failure to give the *Van Vlack/Hunter* type of instruction, Defendant's Requested No. 26, it is assumed that defendant must feel that if my views on that issue could not raise a response from the other members of the Court, further argument by counsel would be but an exercise in futility—which is a sad state of affairs, where the State has candidly conceded that Defendant's Requested Instruction No. 26 is a correct statement of the law. Earlier I said in concluding Part II that "the State's brief has led the majority into grievous error." I would have thought, until recent years at least, that this rather strong statement alone would have precipitated a rehearing in order to verify the accuracy of the statement, or cause it to be withdrawn. On reflection, even without the benefit of re-argument, I surmise now that what was intended was the statement of being *inadvertently* led into grievous error, because, as I noted earlier, the State's brief did agree on the applicability of I.C. § 19–2105, which is the crux of the *Van Vlack/Hunter* instruction. The State's brief, although in my view erroneous, is decidedly more fair in that respect than the Court's opinion. Obviously, I.C. § 19–2105 requires a special instruction, because it is inconceivable that the jury could apply it (under general instructions) without even knowing of its existence.

On reflection, mention must be made of *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973), found in the voluminous string citation of cases the majority declares itself to have reviewed in its footnote 5. Here, indeed, is a study in proportionality. *Beason* is a case exactly on all fours, including the murder of a child. The majority who today sees no proportionality problem with Emilio Aragon's sentence was also part of the *Beason* majority. Beason was not only convicted of second degree murder, but was only charged with second degree murder. Proportionality will never exist so long as prosecutors have discretion in charging, and, worse yet, in assuming that it is in their prerogative to also tell the judge which convicted first degree murderers should die and which should live. This problem has been heretofore discussed in other death penalty cases. It should not be the prosecutor nor the judge who makes that awesome decision, but the jury. The Idaho Constitution makes it so.

## APPENDIX

### MEMORANDUM IN SUPPORT OF PETITION FOR REHEARING

Rightly or wrongly, I chose the latter approach and submitted the following requested jury instructions Numbers 8–13, R. Vol. I, pp. 243–245.

8. Murder is the unlawful killing of a human being with malice aforethought.

Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

Malice aforethought, either express or implied, is manifested by the doing of an unlawful and felonious act intentionally, deliberately, and without legal cause or excuse. It does not imply a pre-existing hatred or emnity toward the individual injured.

9. In order to convict the defendant of murder of the first degree, express malice must be proved beyond a reasonable doubt, implied malice will only suffice for murder of the second degree not murder of the first degree.

10. Murder is classified into two degrees, and if you should find the Defendant guilty of murder, it will be your duty to determine and state in your verdict whether you find the murder to be of the first or second degree.

11. A murder which is perpetrated by means of any kind of willful, deliberate and premeditated killing, is murder of the first degree, and all other kinds of murder are of the second degree.

12. Any unlawful killing of a human being, with malice aforethought, is murder; but if nothing further characterizes the offense it is murder of the second degree. To constitute the higher offense of murder of the first degree there must be willfulness, deliberation and premeditation in addition to malice aforethought. By willfulness is meant that the killing must be accompanied with a clear intent to take life. By deliberation and premeditation is meant that it was done with reflection and conceived beforehand and not upon a sudden heat of passion. But this does not mean that it must have been conceived or intended for any particular length of time for the deliberate purpose to kill and the killing may follow each other as rapidly as successive thoughts of the mind. It is enough that the party deliberate (?) the purpose to slay before the fatal blow. But while the intent and its execution may rapidly follow each other, it is proper for the jury to take into consideration the shortness of such interval in considering whether such sudden and speedy execution may be attributed to sudden passion and anger, rather than to deliberation and premeditation, which must characterize the higher offense of murder in the first degree.

13. If you find beyond a reasonable doubt that the Defendant struck the deceased and intended to kill her, but the intent was formed at the instant of the striking which led to death, he did so without premeditation and deliberation and cannot be convicted of murder of the first degree.

I did not submit those requested instructions with the intention that a line here or a line there or even entire instructions be given out of context but rather that they be given verbatim, and in order. That they are requested in five separate instructions rather than one continuous instruction is only for the purpose of clarity, not because their importance is disconnected or that one instruction is more important than the other.

It was, and is my conclusion that a first degree murder can occur under the laws of Idaho only if:

1. the killing is intentional; and

2. that intent to kill is formed prior to the infliction of the death blow.

Conversely, if a murder is either unintentional or intentional but the intent to kill is formed at the *instant* the death blow is struck, you only have second degree murder. In fact, the only *possible* fact situation for an *intentional* second degree murder is where the intent to kill is formed at the instant the death blow is struck. Any other intentional murder has to be first degree murder by definition. If you intend to kill and that intent is formed prior to the infliction of the death blow, by the successive thought of the mind criteria, you have a willful, deliberate and premeditated murder.

In attempting to get those two points across to the jury I specifically requested my instructions numbers 9 and 13, both of which were refused. Number 9 explains that if they do find malice but not express malice, a deliberate intent to kill, then they cannot convict on murder one. Number 13 explains that if they do find a deliberate intent to kill but are not convinced beyond a reasonable doubt that that intent was formed prior to the striking of the death blow then they cannot convict on murder one. As previously stated, that is the *only*

intentional killing situation that can be second degree murder and if that is not explained to the jury then any talk of willful, deliberate, premeditated and successive thoughts of the mind is superfluous. The definitions of those terms state that if you form the intent to kill and then kill, you are guilty of first degree murder, so why bother to instruct on them? Why not simply charge that if it is found that the murder was committed with express malice, the Defendant is guilty of first degree murder. Why even worry about willful, deliberate and premeditated? The logical results will be the same.

The answer to those questions is: that's not the law. A murder committed with express malice does not automatically equate with first degree murder. But a jury must be instructed on that specific point. It is completely absurd to believe they could reach that conclusion on their own. No jury having found the Defendant intended to kill but not convinced beyond a reasonable doubt that the intent was formed prior to the instant of the infliction of the death blow will ever conclude that the Defendant is therefore not guilty of first degree murder. That simply will never happen. The definitions of willful, deliberate, premeditated and successive thoughts of the mind dictate that a first degree murder conviction will follow a finding of express malice as surely as night follows day *unless* juries are *instructed* that it isn't necessarily so.

The trial court did not instruct as I requested and, as a result, the jury could not possibly have understood the possibility of a second degree intentional murder.

It cannot be more obvious but that the purpose of jury instructions is to *explain* the law so that it can be correctly applied to the facts.

A charge to a jury should, if possible, be concise, plain, simple, and easily understood. It should be couched in clear, intelligible language, and such in its language and meaning as may be readily applied by the jury to the evidence. An instruction should be so clear and concise as to be readily within the comprehension of men such as jurors who are not ordinarily educated in the law. If it is so worded that it might convey to the mind of an unprofessional man of ordinary capacity an incorrect view of the law applicable to the case, it is erroneous. *State v. Dickens,* 68 Idaho 173, 191 P.2d 364.

An instruction that is apt to confuse or mislead the jury, or where it requires an involved explanation, or is ambiguous and uncertain, or erroneously states the law, or is confusing and misleading, should not be given.

70 Idaho 455, 220 P.2d 687; *State v. Taylor,* 59 Idaho 724, 87 P.2d 454; 23 *C.J.S. Criminal Law,* § 1306, p. 893.

All of the instructions given in a case must be read and considered together, and where, taken as a whole, they correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge, and was not misled by any isolated portion thereof. *State v. Tope,* 86 Idaho 462, 387 P.2d 888.

Certainly it is a correct statement of the law that the jury instructions should be considered as a whole but it must be concluded that from that consideration the jury could *understand* the law, not merely that it was in there, somewhere, for them to figure out and we presume and hope they did so.

Of what possible relevance is it to say the instructions are proper because they consist of statutory language and were approved in the past? That certainly cannot be the issue. The question must be whether the jury could understand the difference between first and second degree murder from the instructions. Clearly the answer to that question is a resounding "No". Only by the most convoluted of reasoning was the State and this Court able to discern the difference from those instructions. How can it even be intimated that a jury would reach the same conclusion? If they cannot possibly understand that difference,

what difference does the source of the language of the instructions make?

Standard 21–1.2 of the American Association Bar Standards for Criminal Justice, Purposes of Criminal Appeals; Appellate Court Structure, is as follows:

(a) the purposes of the first level of appeal in criminal cases are:

(i) to protect Defendants against prejudicial legal error in the proceedings leading to conviction and against verdicts unsupported by sufficient evidence;

(ii) authoritatively to develop and refine the substantive and procedural doctrines of criminal law; and

(iii) to foster and maintain uniform, consistent standards and practices in criminal process.

Again, it is my contention that the Eighth Amendment of the United States Constitution forbids a state from blindly and arbitrarily ignoring the difference in first and second degree murder when a defendant can die for one and not the other. That prohibition is no less true because the failure to distinguish is based upon statutory language and long-approved case law.

It is time for this Court to establish for this State, as clearly and concisely as possible, exactly what constitutes the crime of first degree murder.

A man must not be sentenced to death, even for the brutal murder of a defenseless baby, unless his jury was *clearly* instructed as to the difference between first and second degree murder. To think that the jury in this case was so instructed is sheer delusion.

DATED this 30th day of August, 1984.

Respectfully Submitted,

By /s/ Robert I. Fallowfield

Robert I. Fallowfield

Attorney for Defendant-Appellant

Mark Emilio Aragon

## REMITTITUR AND ORDER

The Court having heretofore announced its Opinion on the 22nd day of June, 1984; and the Court having thereafter denied a Petition for Rehearing; and the Opinion of the Court having now become final; therefore,

IT IS HEREBY ORDERED, that the district court shall comply with the directive of the Opinion of this Court by the issuance of a DEATH WARRANT pursuant to Chapter 27 of Title 19, Idaho Code, as amended by Chapter 159 of the 1984 Session Laws.

IT IS FURTHER ORDERED, that the issuance of a DEATH WARRANT by the district court shall be done in accordance with I.C. §§ 19–2705 and 19–2715 as amended by Chapter 159 of the 1984 Session Laws.

IT IS FURTHER ORDERED, that there shall be a 42-day delay period before the issuance of a DEATH WARRANT to allow the Defendant-Appellant to file any post-conviction challenge, as required by I.C. § 19–2719(2) and (3), which 42-day delay period shall commence running on the date of this Remittitur and Order.

IT IS FURTHER ORDERED, that the filing and processing of all pending and new motions and petitions by the Defendant-Appellant, if any, and any appeal from any ruling of the district court thereon, shall be in accordance with I.C. § 19–2719 as created by Chapter 159 of the 1984 Session Laws.

IT IS FURTHER ORDERED, that Chapter 159 of the 1984 Session Laws shall apply to and govern all further proceedings in this action.